279 So.2d 679 (1973)
Succession of Earl FALGOUT.
No. 53220.
Supreme Court of Louisiana.
June 11, 1973.
*680 James O. Manning, New Orleans, for plaintiff-appellant.
James R. Pertuit, New Orleans, for defendant-respondent.
SUMMERS, Justice.
Earl Falgout departed this life on October 2, 1971. He left a last will and testament in which he bequeathed to his wife Helen Squires Falgout the disposable portion of his estate. He appointed her executrix with full seizin and without bond. By the will he also appointed James R. Pertuit, Esquire, as attorney for the executrix.
The will was duly probated, descriptive lists of the property were filed, and the executrix proceeded with the administration of the estate with Pertuit acting as attorney.
On December 21, 1972 Pertuit filed a motion in which he alleged that the surviving spouse Helen Squires Falgout, as testamentary executrix, had failed and refused to produce or account for certain assets of the estate. This, it was alleged, prolonged and hampered the administration of the estate and its conclusion.
The motion further alleged that the executrix had secreted and suppressed or refused to furnish information concerning trucks and trailers purchased by the deceased prior to his death, titles to which were in the name of the executrix's mother. She would not produce bank statements, cancelled checks and other documents pertinent to these transactions, he alleged. Other documents relating to real estate transactions were also being withheld. The documents and information were asserted to be necessary to properly administer the succession. In this motion Pertuit also requested that the Court approve an interim allowance of $15,000 as attorneys fees. A rule was accordingly issued requiring the executrix to show cause why a disclosure of, and production of, the withheld documents and information should not be made, and why the interim allowance of attorneys fees should not be granted.
Shortly thereafter, on January 2, 1973, the executrix addressed a letter to Pertuit discharging him as attorney for the succession, and instructing him to turn the file over to James O. Manning, Esquire, who would thereafter act as attorney for the succession. This was followed, on January 5, 1973, by a motion of the executrix filed in these proceedings to discharge Pertuit and to have Manning designated as attorney of record, subject to Pertuit's right to compensation for services previously rendered. At the same time, the executrix excepted to the rule filed against her. The grounds were that the rule could not properly be brought by Pertuit as he had been discharged; and the question of attorneys fees was a matter which should be litigated via ordinaria, rather than by summary process.
When the rule brought by Pertuit was heard on January 5, 1973 it was made absolute. The executrix was ordered to furnish to Pertuit all requisite information and make full disclosure of all succession assets. Pertuit was allowed $10,000 as interim attorneys fees. At the same time, the Court denied the motion of the executrix to discharge counsel without cause.
Writs were applied for to review these orders. The Fourth Circuit refused the application. We granted writs to review both orders on application of the executrix.
In the meantime, according to the record before us, the $10,000 attorneys fees has been paid to Pertuit. In addition, we understand the information sought in Pertuit's motion has now been furnished. These issues are, therefore, moot. This *681 leaves for resolution the question whether a testamentary executrix may discharge without cause an attorney appointed by the testator as attorney for the succession.
According to the record, the trial judge based his ruling upon the pronouncements in Succession of Zatarain, 138 So.2d 163 (La.App.1962), cert. denied:
Except for the foregoing we believe the views herein originally expressed clearly indicate our recognition and affirmation of the firmly settled principle that an attorney named by a testator to represent the testator's executor or heirs enjoys an "irrevocable status" in that as an agent of the testator so designated in the testator's will he may not be discharged from the mandate thusly conferred. We further believe our initial remarks made it abundantly clear that such an appointment involved the duty, privilege and obligation to represent the executor and heirs of the testator until the testator's estate is settled and the correlative right to compensation for such professional services.
We wish to make it clearly understood that the agency thusly established is irrevocable in the sense that it may not be cancelled or terminated by the executor or heirs of the testator without the consent of the attorney. Such a mandate, however, does not confer upon the agent power to deal with the property of the principal as his own and consequently does not bestow upon the agent authority which may be delegated or transmitted to a sub-agent.
Succession of Zatarain presented the question whether the lawyer designated by the testator as attorney for the succession could name his successor in the event of the demise of the attorney designated in the will. As the quoted language of the Zatarain Court makes clear, this could not be done.
Our problem is similar to that presented in Rivet v. Battistella, 167 La. 766, 120 So. 289 (1929). There the question was whether designation of an attorney for a succession in the decedent's will is valid and binding on those who take under the will. In holding that such a designation was binding, the court found that a donor under Articles 1527 and 1519[1] may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals. Nothing contrary to law or good morals was found in such a designation, the court observing that such a testamentary designation merely prescribes the method and channel through which the estate shall be settled and turned over to the beneficiaries under the will. According to that opinion, "... this is entirely within the rights of the testator. See Succession of Serres, 135 La. 1005, 66 So. 342."
It is correct to say, therefore, that the same law which confers upon a man the right to dispose of his property by last will also confers upon him the right to designate an attorney to perform the legal services required by his succession. Such a designation becomes a condition of the legacies and the executor's appointment. Once the testator has exercised this right neither the executor, heirs, legatees nor the courts can question the necessity or propriety of the designation. Thus, unless facts exist which furnish adequate cause recognized in law for refusing to do so, the executor must abide by the lawful condition imposed by decedent in his testament. Succession of Rembert, 199 La. 743, 7 So.2d 40 (1942).
In the posture of the case at bar only the bare right of the executor to discharge *682 the attorney designated in decedent's will is in question. No cause is asserted for the attempted discharge in the motion which is now before us. And, since we find the motion to be without merit, we affirm the trial judge and court of appeal.
In the interval while the instant issue was being formed and during the time it progressed to this Court, we note from the record that the executrix filed another motion to discharge the attorney appointed by the testator. This latter motion is based upon an allegation that she was entitled to have counsel discharged as a matter of right. In addition, the motion alleges that he should be discharged for cause in that he represented conflicting interests; he attempted to compromise her interest in litigation without her consent; he counseled against the succession interest in her suit as executrix for sums due the succession; and he improperly classified property in which the succession had an interest. Since this motion is not before the court, no opinion is expressed on that portion of the motion seeking discharge of the attorney for cause.
For the reasons assigned, the judgment of the trial court is affirmed.
NOTES
[1] La.Civil Code art. 1527 provides:

"The donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals."
Ibid., art. 1519 provides:
"In all dispositions inter vivos and mortis causa impossible conditions, those which are contrary to the laws or to morals, are reputed not written."