369 So.2d 166 (1979)
Succession of Irwin W. ROSENTHAL.
No. 9745.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1979.
Rehearing Denied April 16, 1979.
Writ Refused June 11, 1979.
*168 Kierr, Gainsburgh, Benjamin, Fallon & Lewis, Harvey J. Lewis, New Orleans, for appellee J. William Rosenthal, M. D.
Henry P. Dart, III, New Orleans, for appellant Mrs. Irwin W. Rosenthal.
Richard A. Dowling, New Orleans, for appellee Austin Anderson.
Before SAMUEL, LEMMON and SCHOTT, JJ.
SCHOTT, Judge.
Decedent, an attorney at law practicing in New Orleans, died on October 1, 1975, and is survived by his widow. He had no forced heirs and by virtue of a matrimonial agreement there was no community of acquets and gains between him and his wife.
This succession was opened on October 6, 1975, and shortly thereafter an olographic will dated June 18, 1964, and a codicil dated January 6, 1972, were admitted to probate. Mrs. Rosenthal was appointed executrix in the will, and the following provisions were made for the employment of an attorney:
"My executrix shall select the attorney to handle my succession. I fix the fee of said attorney as that fixed by the New Orleans Bar Association for administering successions. A declaration or affidavit of values may be filed in lieu of formal inventory, if possible so to do. The attorney's fee shall include all legal matters in connection with my estate, and the preparation and filing of the United States Estate Tax Return, if needed . . ."
Mrs. Rosenthal employed Austin Anderson as attorney for the succession, and on July 1, 1976, she filed a sworn descriptive list of the succession's assets. This showed a total value of $1,247,708, consisting of real estate totaling $620,194, stocks and bonds $382,339.23, cash $215,000.57, jewelry $20,215.90, and other property $9,958.39.[1]
*169 The executrix employed John L. Favolora, certified public accountant, to handle the accounting and tax returns for the estate, and from the outset he assisted Anderson in the collection and evaluation of the assets leading up to the filing of the descriptive list. The estate tax return was due on July 1 and after Favolora prepared it the first disagreement among the parties emerged over the amount of attorney's fee due Anderson which Favolora listed in the return as $62,385, based upon 5% of the gross estate. This brought objections from the two principal legatees, Mrs. Rosenthal and Dr. Rosenthal. An agreement was apparently reached among the parties that Anderson's fee would be $45,000 and the tax return would be amended at a later date to reflect that change. The return also showed a fee due Favolora in the amount of $12,477.
With the question of Anderson's fee resolved to everyone's apparent satisfaction, the administration of the succession continued routinely with Anderson as the attorney until January, 1977. During this period a number of leases were negotiated on the commercial properties owned jointly by the succession and Dr. Rosenthal and the usual advertising and homologations were obtained in this connection.
By January, 1977, relations between Mrs. Rosenthal and Dr. Rosenthal, and between Mrs. Rosenthal and Anderson, were becoming strained and the stage was set for the litigation which has culminated with the appeals presently before us. The root of the problem is in the wording of the codicil and was aggravated by a shortage of cash required for the payment of the succession debts. The pertinent provisions of the codicil are as follows:
"I give and bequeath to my wife, Henrietta Barcene Rosenthal, for her life, the income and the usufruct for her life, of all amounts, real, personal and mixed, of all assets that form my estate at my death.
"And in the above bequest, at no time shall she ever be called upon to furnish bond or to cause replacement of any existing structure that might be upon the real estate that forms part of my estate, unless covered by insurance.
"Should any undue repair be necessary the structures then existing shall be demolished unless the same can be repaired by money collected from insurance carried on said property.
"The total management of my estate shall rest in my wife; at no time and under no circumstances shall she be called upon to furnish bond in connection with the bequest of the usufruct I now make unto her herein.
"At no time, and under no circumstances, shall my usufructuary, my surviving wife, alienate by mortgage or sales, my interest in the real estate that I own, hereinbefore described.
"Any and all state inheritance taxes, and United States Estate Tax shall be paid from the corpus of my estate.
"Subject to the bequests hereinabove made, I give and bequeath the balance, or remainder, of my entire estate, its naked ownership of the real estate and improvements thereon, unto my nephew, Dr. J. William Rosenthal, and subject also to the bequest to my wife, I bequeath to him the naked ownership of my stocks, bonds and other assets."
The cash problem confronting the estate is readily demonstrated by the schedule prepared by Favolora showing that some $462,910 had been collected in cash as of November 30, 1976. Mrs. Rosenthal's tableau of distribution filed in the proceedings in April, 1977, and to be discussed in detail hereafter, showed expenditures by her as executrix in the amount of $426,217 and items payable for her executrix's fee in the amount of $31,193, and for Henry P. Dart, III, attorney, in the sum of $22,500. The tableau did not include fees for Anderson and Favolora.
At a meeting held early in 1977 and attended by Mrs. Rosenthal, Anderson, Dr. Rosenthal, his attorney, and Favolora, an agreement was reached whereby sufficient cash would be made available by the sale of the succession's jewelry and certain municipal *170 bonds. Also discussed as a source of additional cash were two items totaling $20,000 which Mrs. Rosenthal claimed as her own and not the succession's property. These included a check for $15,000 which Mrs. Rosenthal had withdrawn from decedent's bank account shortly before his death and which she claimed as a manual gift, and the sum of $5,000 which she withdrew from decedent's bank account shortly after his death pursuant to LSA-R.S. 9:1513. Favolora, as an accountant, was of the opinion that this $20,000 belonged to the succession, and this opinion was apparently shared by Anderson.
Although Mrs. Rosenthal employed Dart around this time to represent her personally, Anderson continued to represent the succession and took steps to close out the estate. He prepared a number of pleadings, including a tableau of distribution, a final account and a petition for possession and for the discharge of Mrs. Rosenthal as executrix. However, much to his surprise, on April 6, 1977, Mrs. Rosenthal, through Dart, filed a petition and obtained an ex parte judgment of possession, recognizing her as the usufructuary of decedent's estate and as absolute owner for her lifetime of all cash and "consumable items" belonging to decedent at the time of his death, and providing that the "nonconsumable items" forming part of this estate would remain under her administration.
On April 14, Dr. Rosenthal filed a rule to set aside this judgment of possession to which Mrs. Rosenthal responded with exceptions of improper use of summary proceedings and no cause of action. At this point, Anderson no longer represented the succession and Dart became attorney of record on April 26, 1977. The trial of this rule was referred to a commissioner of the Civil District Court, and on May 3 judgment was rendered overruling Mrs. Rosenthal's exceptions and setting aside the judgment of possession. This is one of the judgments from which Mrs. Rosenthal has appealed.
On April 29, 1977, Mrs. Rosenthal filed a petition for homologation of "final tableau of distribution." The tableau provided that she had already paid some $426,216 of debts owed by the succession and that she proposed to pay her executrix fee of $31,192 and $22,500 to Dart "for legal services as attorney for the succession." In the tableau she recited that there were more than sufficient assets to pay the debts and consequently "there is no necessity to show total funds available or to rank creditors as set forth in Article 3303 of the Louisiana Code of Civil Procedure."
An opposition to the tableau was filed by Dr. Rosenthal on the basis that it included Mrs. Rosenthal's personal bills paid out of succession funds, because of the proposed payment to Dart and because he was entitled to reimbursement in connection with repairs of succession property and compensation for services in managing the property. Anderson opposed the tableau with respect to the proposed executrix's fee and the fee for Dart, and because it failed to list him as a preferred creditor for an attorney's fee of $62,735, or in the alternative $45,000. Finally, Favolora opposed the tableau because it did not list him as a creditor for $12,477. After the required publication, the oppositions were tried on June 3, 20 and 24, 1977, and were submitted to the court for a decision. On June 28 Dart moved for a continuance, seeking to produce additional testimony by Mrs. Rosenthal who had already testified in the proceedings, but on July 15 this motion for a continuance was denied, and from this judgment Mrs. Rosenthal has also appealed.
On August 22 the trial court rejected and disapproved the tableau of distribution except to approve payment of an attorney's fee to Dart for $11,000 and the executrix's fee for $31,192.70. He maintained the opposition of Dr. Rosenthal to the extent of allowing him $8,973 for repairs of the property and $5,000 for managing it. He maintained Anderson's opposition to the extent of allowing him $45,000, and Favolora's to the full extent of awarding him the $12,477 fee. He further ordered the executrix to seek court authority to sell succession assets to the extent that this might be necessary to satisfy payments of the debts to Dr. *171 Rosenthal, Anderson and Favolora. From this judgment, Mrs. Rosenthal has appealed.
In the meantime Mrs. Rosenthal had on June 24 filed a supplemental tableau in which she sought to obtain control over all liquid assets as the usufructuary. On October 6 she filed a rule against Dr. Rosenthal seeking the same relief and also seeking a declaration that Dr. Rosenthal forfeited his legacy. This relief was based on the following provisions in the decedent's will:
"Any person, directly or indirectly, who shall attack this will, or any of its provisions, shall lose any benefits to be derived hereunder."
On December 19 the trial judge rendered several judgments. He denied Mrs. Rosenthal's motion to take possession as usufructuary as well as her motion to have Dr. Rosenthal forfeit his legacy. He denied her motion for a new trial from the judgment of August 22 in which he rejected her tableau of distribution. He denied homologation of her supplemental tableau distribution, and finally he dismissed a rule that Mrs. Rosenthal had filed on October 13 in which she attempted to traverse her original descriptive list of assets by claiming for herself personally in opposition to the succession, 1) $20,000 cash; 2) a dividend in the amount of $1412.80 which had been declared prior to the decedent's death but was paid after the date of his death; and 3) certain pieces of jewelry said to be manual gifts from decedent. From these judgments she has also appealed.
The first issue before us is the validity of the judgment of May 3 in which the partial judgment of possession in favor of Mrs. Rosenthal was set aside.
Mrs. Rosenthal raises procedural objections to this judgment, claiming that there was improper use of summary proceedings to attack the judgment of possession and that the matter, once referred to the Commissioner of the Civil District Court was not properly handled in accordance with R.S. 13-1171. She bases her first objection on C.C.P. Art. 2971's provision that the rules applicable in ordinary proceedings apply to succession proceedings, except as otherwise provided by law, and she argues that no provision of the law authorizes summary proceedings to set aside a judgment of possession. She likens her position to that of any litigant who has taken a final judgment and the established jurisprudence to the effect that an action of nullity brought under C.C.P. Arts. 2001 et seq. must be commenced by ordinary proceeding.
It was Mrs. Rosenthal's duty as testamentary executrix to comply with the law regarding the administration of the succession. As a fiduciary under C.C.P. Art. 3191 she also owed a duty to Dr. Rosenthal as a presumptive legatee of this succession, as well as creditors such as Anderson and Favolora. When she filed this petition for partial possession, no tableau of distribution had been homologated so that Art. 3372 was applicable. It provides:
"At any time prior to the homologation of the final tableau of distribution, the legatees in a testate succession may be sent into possession of all or part of their respective legacies upon filing a petition for possession as provided in Articles 3031 through 3035, except that the proceeding shall be contradictory with the executor. Upon the filing of such a petition, the court shall order the executor to show cause why the legatees should not be sent into possession. If the legatees are sent into possession of a part of their respective legacies, the executor shall continue to administer the remainder."
This article provides the mechanism for a legatee to get possession of his legacy but by requiring a contradictory hearing it enables the executor to inform the court of any circumstances which make immediate possession inappropriate.
Mrs. Rosenthal argues that a contradictory hearing was unnecessary and the ex parte petition was proper because she was at once the legatee and the executrix. This argument ignores the fact that she had a conflict of interest and her ex parte petition was in utter disregard of her duty to Dr. Rosenthal, as well as Anderson and Favolora.
*172 At this juncture it is appropriate to elaborate on Mrs. Rosenthal's conflict of interests so as to emphasize the impropriety of the action she took. Decedent bequeathed to her the usufruct of his property and Dr. Rosenthal the naked ownership. He also bequeathed to her the income from all of his property for the duration of her life.
In her petition for possession Mrs. Rosenthal alleged:
"Petitioner is competent and desires to be recognized as usufructuary of his succession without bond, and as such sent into possession as absolute owner of all income, dividends, interest, rents accruing from or forming part of the estate of Irwin W. Rosenthal from and after the date of his death on October 1, 1975 for the lifetime of petitioner, together with all cash and items equivalent to cash and consumable items which formed part of his estate on the day of death, and more particularly, but without limitation, the following described items:" (Emphasis ours)
The ex parte judgment of possession decreed that Mrs. Rosenthal is the "absolute owner" of "all cash and items equivalent to cash and consumable items" belonging to decedent at the time of his death.
The usufructuary is not entitled to absolute ownership. Although she enjoys an imperfect usufruct over cash which permits her to spend it, C.C. Art. 536, that right is subject to "the obligation of returning the same quantity, quality and value to the owner, or their estimated price, at the expiration of the usufruct." C.C. Art. 549. These articles of the Civil Code which were in effect at the time of decedent's death were essentially unchanged by Act 103 of 1977 and have been combined into the present Art. 538. While there may be an inherent practical conflict in the application of this law it is quite clear that the usufruct is not the same as absolute ownership. Comment (c) to present Art. 538 in discussing prior Art. 549 states:
"While the corresponding article in the French Civil Code has given rise to divergent interpretations, Louisiana courts have consistently charged the usufructuary with the obligation to restore the value that the things had at the commencement of the usufruct. See Succession of Trouilly, 52 La.Ann. 276, 26 So. 851 (1899); Succession of Blancand, 48 La.Ann. 578, 19 So. 683 (1896); Succession of Hayes, 33 La.Ann. 1143 (1881); cf. In re Tutorship of Jones, 41 La.Ann. 620, [6 So. 180] (1889)."
Stewart v. Usry, C.A. 5, 1968, 399 F.2d 50, involves the liability of the usufructuary for federal estate taxes, but in an excellent discussion of Arts. 536 and 549 Judge Ainsworth makes the following comments:
"Thus the `ownership' referred to in LSA-C.C. Art. 536 is not in the nature of an unqualified ownership which would exclude the rights which other persons may possess or enjoy on the termination of the usufruct. Although, as a practical matter, a surviving spouse may completely deplete, by use, disposition, or otherwise, the property which she is allowed to use and enjoy, the reverse inference is true alsoshe may not so deplete the property."
This underscores the apparent contradiction between the articles but a reading of the cases and treatises cited in the opinion makes it readily apparent that Mrs. Rosenthal was and is not entitled to the "absolute ownership" of the cash owned by her husband at his death.
In his will decedent specifically provided that state inheritance taxes and federal estate tax were to be paid out of the corpus of his estate. These amounted to $65,655.16 and $310,822.35 respectively. He provided for perpetual care of his family's burial plots and for two legacies of $1,000 each. He prescribed that Mrs. Rosenthal would be paid for services as executrix and for her to employ an attorney at a specified fee. He also provided that property which was not revenue producing was to be sold.
Considering these provisions and the general duties of the executrix to collect his assets, pay his debts, and pay the usual debts of his succession, such as the funeral *173 bill, it was incumbent on Mrs. Rosenthal to segregate the cash belonging to decedent at the time of his death, sell property producing no revenue and add the proceeds to the cash on hand, use this to pay the taxes and debts of decedent and the succession and to sell other assets as would be sufficient to generate the balance of cash needed for that purpose. Of course it was her duty to comply with Title III of Book VI of the Code of Civil Procedure as she took these steps, including those provisions found in Chapter 6, regarding the sale of succession property, Chapter 7 on the payment of debts and charges of the succession, and Chapter 9 on the accounting required of the executrix.
Any income produced on the property of the succession would eventually be Mrs. Rosenthal's under the terms of decedent's will and codicil. But she may not be sent into possession of those funds until she is properly sent into possession by judgment of the trial court. She may not be sent into possession until and unless she complies with the law governing her administration. Chapter 8 of Title III makes it possible for her to obtain interim allowances during her administration.
Mrs. Rosenthal's petition and ex parte judgment of possession flew in the face of all of the foregoing.
We have concluded that the use of summary proceedings was authorized by C.C.P. Art. 2592, which provides that summary proceedings are available for the disposition of "an incidental question arising in the course of litigation," because the ex parte judgment of possession was obtained by Mrs. Rosenthal without any legal basis whatsoever and her action was altogether disruptive of the orderly administration of the succession in direct conflict with her duty as executrix.[2]
As to Mrs. Rosenthal's complaint about the commissioner and his failure to file a report, this objection is irrelevant under the circumstances. The judgment of the trial court, not the recommendation of the Commissioner, is at issue here, and since that judgment was based on the law the Commissioner's role in the matter appears to be superfluous. The Commissioner functions as a trier of factual issues and the provisions of R.S. 13:1171 apply to typical situations where the Commissioner has recommended a judgment based on evidence which he has taken. What was before the Commissioner in the instant case was a question of law and that question was ultimately decided by the court with the Commissioner's report adding nothing.
We have concluded that the judgment setting aside the ex parte partial judgment of possession was eminently correct and will be affirmed.
The next judgment to be considered is that which denied Mrs. Rosenthal a continuance and an opportunity to put on additional evidence after her tableau of distribution and oppositions thereto had been tried for three days. In effect, Mrs. Rosenthal contends that the trial judge abused the discretion afforded him under C.C.P. Art. 1601 because she was prevented from putting on rebuttal testimony after the third day of trial. The record shows that she did testify at the beginning of the trial and that she rested her case and submitted the matter on briefs to be filed thereafter along with the other parties to the case. Nothing in her brief suggests any real reason for concluding that the trial judge abused his discretion. On the contrary, she was given ample opportunity to be heard and the trial court correctly proceeded to judgment without unnecessary and undue further delay on the part of the litigants. We see no merit to this contention and the judgment denying the continuance will be affirmed.
We turn next to the judgment of August 22 which rejected plaintiff's tableau of distribution almost in its entirety and allowed only two debts to be paid by her along with the maintenance of the oppositions as aforesaid.
*174 The tableau of distribution is provided for in Art. 3303 as follows:
"When a succession representative desires to pay charges or debts of the succession, he shall file a petition for authority and shall include in or annex to the petition a tableau of distribution listing those charges and debts to be paid.
"If the funds in his hands are insufficient to pay all the charges and debts in full, the tableau of distribution shall show the total funds available and shall list the proposed payments according to the rank of the privileges and mortgages of the creditors."
At the outset of this discussion, it must be noted that this article could not be followed literally because most of the debts listed on the tableau had already been paid when the tableau was filed. The scheme of the Code of Civil Procedure with respect to the payment of debts and charges of successions set forth in Art. 3301, et seq. begins with a requirement that a succession representative may pay debts only with the authorization of the court, with only two exceptions admitted; namely, for the situation where there is a going business provided for in Art. 3224 and as provided for in Art. 3302. The latter article does not dispense the succession representative from the necessity of obtaining a court order but simply eliminates the requirement of publication of the debts under certain circumstances. Comment (b) to this article indicates that the court has broad discretion in authorizing the payment of debts without publication and obviously the judge in the exercise of that discretion may consider the solvency and liquidity of the succession along with the nature of the debts sought to be paid. For instance, on the tableau of distribution filed by the executrix herein are the funeral bill and many expenses of decedent's last illness. Without a doubt she could have gotten court authority for the payment of these debts without publication under Art. 3302, but instead she chose to pay the bills and then sought to have court ratification by tardily filing a tableau of distribution.
If we were to adhere strictly to the Code provisions at this point no tableau could ever be homologated, no final account could ever be homologated under Art. 3332 and the succession proceedings would come to an impasse. Thus, although the Code does not provide for the situation where the executrix has paid debts without court authority it becomes necessary to implement the provisions concerning the tableau of distribution retroactively and thereby restore some semblance of order to the proceedings.
The tableau of distribution was duly advertised and creditors of the succession were thereby notified. The only oppositions came from Dr. Rosenthal, Anderson and Favolora. At the trial of the opposition each individual item was discussed by the executrix and many of the items were approved expressly by Dr. Rosenthal. The other two opponents did not object specifically to the items on the tableau but only because their claims were not listed. Had the executrix simply filed pursuant to Art. 3302 a petition for authority to pay many of the debts, such as the state and federal taxes, the funeral bill and the special legacies which are on her tableau, the court undoubtedly would have authorized the payment. Since no one opposed the account other than the three opponents mentioned, in view of the fact that the tableau was published in accordance with law, since no objection was made to some of the disbursements, and since the succession is amply solvent, there is no reason why the tableau should not have been homologated in part as to those items which Dr. Rosenthal approved.
This applies to all of the items on the first page except the sixth item which was paid to Leon Irwin & Co., Inc.; all of the items on the second page except the first, to Braniff Place for $1030.13, and the third, to Coco Gulf Service for $227; all of the items on the third page except for the first, to Braniff Place, the eighth, to Louisiana Companies, the ninth, to Willow Wood, the tenth to National Jewish Hospital Research Center, the eleventh, to Congregation Temple *175 Sinai, the fourteenth, to Mrs. Rosenthal for $1233.53, and the fifteenth to Quality Flower Shop. On page four the account should be homologated only with respect to the second item to OK Storage & Transfer, the sixth, to Latter & Blum, the thirteenth, to Acme Marble & Granite Co., and the twenty-second and twenty-third items to Temple Sinai and Congregation Chevra Thilim for $1,000 each. On the fifth page the tableau should be homologated only to the extent of the first and second items to the Collector of Revenue and Internal Revenue Service for $119 and $2568 respectively, the fourth item to the Sewerage and Water Board, the tenth to Hebrew Rest Cemetery Association, the twelfth, to Whitney National Bank, the thirteenth to the Sewerage and Water Board, the eighteenth, to the Sewerage and Water Board, and the twenty-first item to the Collector of Revenue for the State of Louisiana. On the sixth page the tableau should be homologated only to the extent of the first item to the Internal Revenue Service, and the eighth, to Security Van Lines. On the seventh page the tableau should be homologated only to the extent of the third item to the Whitney National Bank, and the sixth, to John Favolora for $49.31.
In all other respects the judgment disapproving the tableau of distribution will be affirmed. The court correctly disapproved a number of items which were expenses for rental properties owned jointly between the succession and Dr. Rosenthal and which the executrix agreed to remove from the tableau pending a separate settlement of these items between her and Dr. Rosenthal. The court correctly disallowed rent Mrs. Rosenthal paid for her apartment in Braniff Place from October, 1975, to June, 1976, flowers she purchased from the Quality Flower Shop to put on the graves of her husband's relatives, various donations she made to charitable institutions after the death of her husband, telephone bills for her own personal telephone in her apartment after the death of her husband, her own federal and state income taxes for the year 1976, an item to Louisiana Companies for insurance on her own property and a claim for reimbursement in the amount of $1233.53.
With respect to the last item, although it may be that these were expenses she incurred in connection with her husband's last illness, they are not properly documented at this time and were properly disallowed. Her right to reassert this claim is reserved to her.
Additionally, the succession owned a 1965 automobile which the executrix finally got authority to sell for $175 in October, 1977. Among the items on the tableau is one to repair the automobile for $227 and others for fourteen months of rent for the storage of that automobile at $31.80 per month. Because these expenditures seem inconsistent with the requirements of sound administration they were properly disallowed. Finally, the items totaling $82 for rent on decedent's law office long after he died was not adequately explained by the executrix and was properly disallowed.
Turning next to the other items which were allowed by the trial court, these include sums of $8,973.79 and $5,000 to Dr. Rosenthal, $45,000 to Austin Anderson, and $12,477 to Favolora. The allowance of a payment to Dart by the executrix is the subject of an answer to the appeal by Dr. Rosenthal. Each of these items will be discussed, beginning with the amount awarded to Favolora.
As to this item there is no real contest as to the amount of Favolora's bill or the fact that the bill is due and owing. The problem raised by the executrix is with respect to who must ultimately pay this amount. She contends the last will and testament of the decedent provided that the attorney would be paid out of his estate a fee as prescribed by the fee schedule of the New Orleans Bar Association, and that this fee would include preparation of the federal tax return.
Favolora does not break down his fee to show what portion was allocated to the preparation of the return and the balance for general accounting services which he has rendered to the succession. Unquestionably he is entitled to be paid in full out *176 of the succession, and to that extent the judgment appealed from will be affirmed. This, however, does not solve the problem as far as the liability of the succession is concerned for attorney's fees. The ultimate issue in connection with attorney's fees (to be discussed hereinafter) is whether that portion of Favolora's fee for the preparation of that estate tax return will be deducted.
With respect to the amounts awarded to Dr. Rosenthal on his opposition, the evidence shows that he is entitled to the sum of $8,973.79 for repairs made to the property. While the succession was pending one of the buildings was damaged by a fire and, with Mrs. Rosenthal's consent, Dr. Rosenthal handled the fire loss completely to the extent of hiring a contractor to repair the property and collecting the insurance proceeds. Mrs. Rosenthal has taken the position that she would not have expended anything on repairs in excess of the fire insurance proceeds but she makes no proof that the building was insured 100%, that the coverage was adequate or that the repairs made by Dr. Rosenthal were unnecessary. On the other hand, Dr. Rosenthal testified that the repairs were necessary and since the building was put back into condition where it was revenue producing as the result of these repairs we see no error on the part of the trial judge in allowing this item to Dr. Rosenthal.
On the other hand, the award of $5,000 to Dr. Rosenthal for services rendered appears to be erroneous as a matter of law. He was a co-owner of the property with the succession, and in the absence of an agreement between co-owners one cannot collect a fee for managing the property from the other. Beavers v. Stephens, 241 So.2d 1278 (La.App. 3rd Cir. 1977), Conrad v. Burbank, 25 La.Ann. 112 (La.1873). There is no evidence of a contract between Mrs. Rosenthal and Dr. Rosenthal, and even if there had been Mrs. Rosenthal was not at liberty to obligate the succession without court approval. Mrs. Rosenthal may have incurred some individual liability to Dr. Rosenthal, but that issue is not before us. We have resolved that the judgment insofar as it awards Dr. Rosenthal $5,000 for managing the property will be reversed.
We turn next to the problem of the attorney's fee.
There is no question from the record but that Anderson performed valuable services for the succession and ultimately was prepared to complete his work, except for the fact that Mrs. Rosenthal became disenchanted with him in the beginning of 1977. Because she would not cooperate with him he was unable to complete his work.
The language of the will limited the succession's liability for attorney's fees to $28,704.16 based on the Bar Association Fee schedule. However, Mrs. Rosenthal and Dr. Rosenthal agreed that the succession would pay Anderson a fee of $45,000 when they met with Favolora to resolve the matter prior to the filing of the tax returns. Since this agreement did not operate to the detriment of any creditors and since the Rosenthals were the only parties affected by the agreement the amount of the fee was properly approved by the court.
For the same reasons we need not address the problem presented by the will that Favolora's fee for the preparation of the tax returns was to be deducted from the attorney's fee. Since both Mrs. Rosenthal and Dr. Rosenthal agreed that the succession would pay Favolora's fee over and above Anderson's $45,000 the problem was solved.
Anderson's employment was subject to termination at Mrs. Rosenthal's will but he was entitled to compensation for the services he rendered. Fiasconaro & Fiasconaro v. Orlando, 342 So.2d 1261 (La.App. 4th Cir. 1977). We have resolved that Anderson performed 90% of the services he had undertaken, and consequently is entitled to recover from the succession the sum of $40,500. The judgment will be amended accordingly.
The problem of Dart's fee is not solved by the foregoing. The award to him against the succession for $11,000 for legal services rendered to the succession as of August 22, *177 1977, is not supported by the facts or the law. Most of his efforts were in behalf of Mrs. Rosenthal personally. When he first became involved Anderson was still representing the succession and was given the impression that Dart had been employed by Mrs. Rosenthal to represent her personally with no intention to discharge Anderson as attorney for Mrs. Rosenthal as executrix. Even when Mrs. Rosenthal filed her petition for possession on April 6, 1977, in her fiduciary and personal capacities with Dart as her attorney, Anderson was still the attorney of record for the succession and had not been discharged. He was not formally discharged until April 26 when, on Mrs. Rosenthal's motion, he was removed as counsel of record.
We have already resolved that Anderson was entitled to $40,500 only because he was the beneficiary of a specific contract made by both Mrs. Rosenthal and Dr. Rosenthal. Dart was not the beneficiary of such an agreement, and without it the fee of the attorney for the succession was limited to $28,704. Since this was already committed to Anderson Mrs. Rosenthal could not employ Dart at the succession's expense without agreement from Dr. Rosenthal or authorization from the court. We view the trial court's award to Dart as a retroactive approval of this succession obligation, the propriety of which is now at issue by virtue of Dr. Rosenthal's answer to Mrs. Rosenthal's appeal.
Dart's services to the succession as of August 22, 1977, were rendered primarily to the benefit of Mrs. Rosenthal as an individual and not as the succession representative. The petition for and judgment of possession were improper from the standpoint of the succession. The tableau of distribution drew opposition not because of the legitimate succession debts it included but because of the many personal claims of Mrs. Rosenthal it contained. The litigation Dart was handling was the result of Mrs. Rosenthal's personal claims in opposition to the succession. Thus, there is no support for an award of $11,000 to Dart against the succession for services rendered as of August 22, 1977, and the award to Dart will be reduced to $4500, and contemplates his completion of the succession. Of course his right to claim additional compensation from Mrs. Rosenthal personally is recognized.
The remaining judgments before us are those denying Mrs. Rosenthal's rule to traverse the descriptive list of assets, denying her motion to have Dr. Rosenthal's legacy forfeited, dismissing Mrs. Rosenthal's application to homologate a supplemental tableau of distribution and denying a motion' she filed to get immediate possession of her usufruct.
With respect to the first of these the rule to traverse was properly dismissed. One of the first duties of the executor is to have an inventory taken of the succession property pursuant to C.C.P. Art. 3131 et seq. or to furnish a descriptive list pursuant to Art. 3136 in lieu of an inventory. In this case, Mrs. Rosenthal as executrix chose to file a descriptive list and was joined in the affidavit of its correctness by Dr. Rosenthal. Art. 3137 provides that the descriptive list is prima facie proof of all matters shown therein. Thus, she is in the anomalous position of attempting to traverse her own descriptive list which she herself swore to as accurate fifteen months previously. In any event the trial judge was apparently unimpressed with Mrs. Rosenthal's testimony that she was the recipient by manual gifts of certain jewelry and the sum of $15,000 shortly before decedent's death. We are not in a position to reverse his credibility call. As to the $5,000 which Mrs. Rosenthal withdrew pursuant to R.S. 9:1513, this was properly included in the assets of the succession. The statute simply authorizes a bank to pay up to $5,000 to a surviving spouse without court proceedings out of funds which are on deposit in the name of the decedent. That is not to say that the funds do not form a part of decedent's succession. Finally, in her rule to traverse Mrs. Rosenthal claims as her own some $1412.80 in dividends which were declared before decedent died but were paid post mortem. We are persuaded that this is not income to which Mrs. Rosenthal will be *178 entitled in full ownership but is part of the succession on which she is to receive only the usufruct. Favolora treated them as assets of the succession for tax purposes. In Leury v. Mayer, 122 La. 486, 47 So. 839 (1908), dividends declared while the usufructuary lived but paid after his death were held to belong to the usufructuary. Present C.C. Art. 552, while not controlling, was an attempted Codification of the jurisprudence and it provides that a dividend declared during the existence of the usufruct belongs to the usufructuary. By analogy the dividend declared prior to the existence of the usufruct belongs to the succession. The judgment on the rule to traverse will be affirmed.
As to the forfeiture of Dr. Rosenthal's legacy, the will provides that anyone who attacks the will will lose benefits derived thereunder. We do not find that Dr. Rosenthal has attacked the will but rather he has taken appropriate action to have the will properly administered. He was entitled to call on her to perform her duties properly and his action in the premises is not an attack on the will as contemplated by the testator. The judgment on this point will be affirmed.
Finally, Mrs. Rosenthal has appealed from judgments which dismissed her application to homologate a supplemental tableau of distribution and denied her motion to get immediate possession of the usufruct. The trial judge properly rejected the supplemental tableau because it did not purport to pay debts and charges but rather was an indirect attempt by Mrs. Rosenthal to be sent into possession of her legacy, the same result she sought in her motion to get possession of the usufruct. She has unduly complicated this succession by failing to comply with the law. After discharging her duties as executrix, including a proper accounting for all funds, she may be sent into possession as usufructuary and income beneficiary.

DECREE
The judgment of May 3, 1977, in favor of Dr. J. William Rosenthal and against Mrs. Henrietta B. Rosenthal, Executrix of this Succession vacating, annulling and setting aside the partial judgment of possession dated April 6, 1977, is affirmed;
The judgment of July 15, 1977, denying the motion for continuance filed by Mrs. Henrietta B. Rosenthal is affirmed;
The judgment of August 22, 1977, on the application of the executrix to homologate her tableau of distribution and the oppositions filed by Dr. J. William Rosenthal, Austin Anderson and John L. Favolora is affirmed in part, amended in part and reversed in part. That judgment as rendered by the trial court is vacated and recast as follows:
The tableau of distribution filed by the executrix on April 29, 1977, is homologated as to the specific items on pages one through seven described in detail in the body of this opinion and is rejected and disapproved otherwise;
The opposition of Dr. J. William Rosenthal is maintained to the extent that his claim for the sum of $8,973.79, with legal interest from August 22, 1977, until paid, is recognized and is denied with respect to his claim for $5,000;
The opposition of Austin Anderson is maintained to the extent of recognizing his claim for attorney's fees in the amount of $40,500 as a privileged claim with legal interest from August 22, 1977, until paid;
The opposition of John L. Favolora is maintained to the full extent of recognizing his claim for $12,477 with legal interest from August 22, 1977, until paid;
The application of the executrix to pay attorney's fees to Henry P. Dart, III, is granted but only to the extent of $4,500 and all oppositions thereto are denied; said fee to cover completion of the succession;
In all other respects and to the extent that the judgment of the trial court dated August 22, 1977, is not in conflict with the foregoing, that judgment is affirmed;
The judgment of December 19, 1977, dismissing the rule of the executrix to traverse the descriptive list of assets is affirmed;
*179 The judgment of December 19, 1977, dismissing the rule of the executrix to show cause why she was not then entitled to the usufruct and why Dr. J. William Rosenthal should not forfeit his legacy is affirmed;
The judgment of December 19, 1977, dismissing the application of the executrix to homologate her supplemental tableau of distribution is affirmed;
The succession is cast for all costs of these proceedings and this appeal.
AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART AND RENDERED.
NOTES
[1] The real estate was decedent's undivided 75.17% interest with the remaining interest owned by his nephew, Dr. J. William Rosenthal.
[2] There is no suggestion by Mrs. Rosenthal that the use of summary proceedings hindered her in the accumulation or presentation of her evidence. Her objection was purely technical.