DOMENGEAUX, Judge.
Mateal Rhodes Mangle died testate on June 14, 1978. The statutory will appointed Henry Rhodes, Jr. as testamentary executor, and dispensed with the necessity of his posting bond. (During the pendency of the district court proceedings, Henry Rhodes, Jr. died and his widow, Louise Rhodes, was substituted as party-defendant.) Henry Rhodes, Jr. and Katie J. Moore, the deceased’s nephew and niece, were named as legatees to decedent’s property. However, Mateal Rhodes Mangle was predeceased by an adopted son, Aubry Henderson Mangle, who was the sole heir of decedent. He was survived by his two daughters, Audrey C. Mangle and Patricia Mangle Sanders (granddaughters of decedent herein). In this succession proceeding, Audrey and Patricia represent their father, sole heir of the decedent. La.C.C. Arts. 881, 882, and 883. In ex parte proceedings, the testament was admitted to probate. Patricia Mangle Sanders and Audrey C. Mangle filed a petition alleging that the will did not comply with the statutory requirements and therefore asked for it to be recalled due to want of form. Petitioners also alleged, in the alternative, that the mortis causa donation exceeded the disposable portion of decedent’s estate and therefore impinged upon their legi-time.[1] Petitioners sought a reduction of the donation. La.C.C. Arts. 1502 and 1504. Petitioners further requested the removal of Henry Rhodes, Jr. as testamentary executor and the qualification of Patricia Mangle Sanders as dative testamentary executrix.
On July 18, 1979, the trial court ordered the removal of Henry Rhodes, Jr. as testamentary executor and further ordered the complete accounting and return of all assets of the succession, as well as all the records, receipts, bank statements and other documents. The trial judge then ordered the appointment of Patricia Mangle Sanders as dative testamentary executrix. The trial court further ordered the removal of the succession attorney, C.O. Brown.
On August 18, 1981, the executrix, Patricia Mangle Sanders, filed a petition making an application to sell real estate in the administration of the succession at a private sale. A hearing was held on a rule to show cause and the trial court determined that the application for private sale by the executrix to sell decedent’s immovable property was proper and ordered a homolo-gation. On January 20, 1982, the trial court dismissed the opposition to the petition for private sale which had been filed by Katie J. Moore, one of the legatees. The legatees (Katie J. Moore and the heirs of Henry Rhodes, Jr.) also filed an exception of lis pendens, alleging that the judgment ordering the homologation of the private sale had been suspensively appealed in forma pauperis. The trial judge withdrew that order and ordered the suspensive appeal dismissed, based upon La.C.C.P. Article 5185 which provides in pertinent part:
“When an order of court permits a party to litigate without the payment of costs, until this order is rescinded * * * * he is not entitled to a suspensive appeal, or to an order or judgment required by law to be conditioned on his furnishing security *200 other than for costs, unless he furnishes the necessary security therefor.”[2]
The executrix, Patricia Mangle Sanders, then filed a petition for homologation of application to sell decedent’s immovable property at a private sale. Audrey C. Mangle (one of the forced heirs and the executrix’s sister) had offered to purchase the property for $5,000.00 cash. The application was approved and the private sale was ordered. However, the executrix was unable to comply with the court-authorized sale because the attorney for the legatees recorded the notice of lis pendens which effectively constituted an encumbrance on the property and prevented the conveyance of the immovable property with a clear title.
On May 19, 1983, pursuant to a hearing on a rule to show cause, the trial judge ordered the cancellation of the lis pendens notice recorded in the Conveyance and Mortgage books of Rapides Parish. The trial judge further assessed all costs of the proceedings against the defendants, Katie J. Moore and Louise Rhodes (widow of Henry Rhodes, Jr. and substituted party-defendant).
Louise Rhodes was permitted to devolu-tively appeal in forma pauperis.[3]
ISSUES
Appellant alleges (1) that the trial judge erred in removing Henry Rhodes, Jr. as executor; (2) that the trial judge erred in removing the original succession attorney; (3) that the trial judge erred in authorizing the private sale of decedent’s immovable property; and (4) that the trial judge erred in appointing the executrix without requiring bond.
REMOVAL OF EXECUTOR
A succession representative is a fiduciary relationship. La.C.C.P. Article 3191. An executor owes a duty to legatees, creditors, and heirs. Succession of Rosenthal, 369 So.2d 166 (La.App. 4th Cir. 1979), writ denied, 371 So.2d 1345 (La.1979); Succession of Anderson, 323 So.2d 827 (La.App. 4th Cir.1975). Fiduciaries may not place their own interests before the succession interest. Succession of Demurest, 418 So.2d 1368 (La.App. 4th Cir. 1982), writ denied, 422 So.2d 158 (La.1982).
Certain allegations of mismanagement and breach of fiduciary duty surfaced at the hearing pursuant to a rule filed to remove the testamentary executor. The two forced heirs, Patricia Mangle Sanders and Audrey C. Mangle, claimed that Henry Rhodes, Jr. was disposing of decedent’s property without court approval. During this period of time the heirs protested the executor’s actions. The trial judge found that the heirs presented evidence of improprieties and possible conflict of interest, i.e., the executor was also named in the will as legatee under universal title. La.C.C. Art. 1612. “While a mere conflict of interest in itself does not warrant removal, when this conflict becomes such that it is actively tainting the administration of the succession, removal of the executor becomes necessary.” Succession of Demarest, supra.
In Succession of Houssiere, 247 La. 764, 174 So.2d 521 (1965), the Supreme Court enunciated the character and standard of the fiduciary capacity:
“We do not subscribe to the view ... that cases of removal for alleged mis-mangement by fiduciaries should be decided on the ascertainment of legislative *201 policy. Rather, we think the issue should be adjudged on whether the act or acts complained of constitute a mismanagement of the estate.”
174 So.2d at 524.
Further, it should be noted that an executor owes a duty to the forced heirs. We conclude that when an executor knows or has strong reasons to believe that there are persons with claims as forced heirs whose legitime is impinged by bequests in the will, he has a duty to make a diligent effort to learn the identity of and inform such persons of the death of the decedent and their possible claims. Succession of Hearn, 412 So.2d 692 (La.App. 2nd Cir. 1982), writ denied, 415 So.2d 215 (La.1982). See West v. Gajdzik, 425 So.2d 263 (La. App. 3rd Cir.1982), writ denied, 428 So.2d 475 (La.1983).
In the instant case, the record is clear that Henry Rhodes, Jr. knew that there existed two persons who were descendants of decedent’s adopted only child and forced heir. The record reveals that Henry Rhodes, Jr. acknowledged the existence of Patricia Mangle Sanders and Audrey C. Mangle in the affidavit filed to probate Mateal Rhodes Mangle’s statutory will. Despite this acknowledgment, Henry Rhodes, Jr. made no attempt to contact the forced heirs concerning their entitlement to the forced portion or notify them of their grandmother’s estate. By conducting himself as he did, the executor breached the duty he owed to the forced heirs.
We have determined by applying the stated law to the facts presented here that the fiduciary standard was not met. We agree with the trial judge’s conclusion that the executor breached his fiduciary duty and must be removed. La.C.C.Art. 3182.[4]
REMOVAL OF SUC'CESSION ATTORNEY
C.O. Brown was named as succession attorney in the decedent’s last will and testament.- It is definitive that under our existing jurisprudence, a testatrix has the right to designate in her last will and testament an attorney to represent her succession; that designation is valid and binding upon the executor, legatees, and heirs. Succession of Boyenga, 424 So.2d 414 (La. App. 2nd Cir.1982), writ granted, 430 So.2d 81 (La.1983), citing Rivet v. Battistella, 167 La. 766, 120 So. 289 (1929). The right of the attorney named in the will to represent the succession and to be paid therefor must be recognized. Succession of Martin, 56 So.2d 176 (La.App.Orl.1952). The executor is powerless to deprive the attorney of his right to act as legal advisor to the succession without just cause. Succession of Falgout, 279 So.2d 679 (La.1973); Succession of Rembert, 199 La. 743, 7 So.2d 40 (1942); Succession of Boyenga, supra.
The court in Boyenga traced the jurisprudential application and clarified this principle:
“... we believe the views herein originally expressed clearly indicate our recognition and affirmation of the firmly settled principle that an attorney named by a testator to represent the testator’s executor or heirs enjoys an ‘irrevocable status’ in that as an agent of the testator so designated in the testator’s will he may not be discharged from the mandate thusly conferred. We further believe that our initial remarks made it abundantly clear that such an appointment *202 involved the duty, privilege and obligation to represent the executor and heirs of the testator until the testator’s estate is settled and the correlative right to compensation for such professional services.
We wish to make it clearly understood that the agency thusly established is irrevocable in the sense that it may not be cancelled or terminated by the executor or heirs of the testator without the consent of the attorney. [Emphasis added.]”
Quoting Succession of Zatarain, 138 So.2d 163 (La.App. 1st Cir.1962).
Once the testator exercises this right, neither the executor, heirs, legatees nor the courts can question the necessity or propriety of the designation except for legal cause. The executor must abide by the lawful condition imposed by the decedent as a testamentary obligation, unless there exists facts and circumstances which furnish adequate cause recognized by law for refusing the designation or removing the attorney. Succession of Falgout, supra; Succession of Rembert, supra; Succession of Boyenga, supra.
An examination of the line of cases indicates that this testamentary privilege has not been definitively classified. The courts have given various interpretations to the exact nature of an attorney designated in a will. In Succession of Zatarain, the First Circuit held that the designated attorney was granted a mandate which terminated only with the attorney’s consent. The court stated that this power coincided with the death of the testator. The court further found that the interest in the estate did not constitute a donation or legacy. Contra, Roberts v. Cristina, 323 So.2d 888 (La.App. 4th Cir.1975), writ denied, 328 So.2d 109 (La.1976).
Despite this apparent difficulty to classify the attorney’s interest,
“ ... it is settled that an attorney so named by a testator enjoys an irrevocable status in that he may not be discharged without his consent except for cause. It is further abundantly clear under the existing jurisprudence that such an appointment not only confers the privilege of representing the succession but also imposes the duty and obligation to represent the succession and/or executor, heirs and legatees and to complete the probate. Accompanying this duty and obligation is the correlative right to compensation for such professional services.”
Boyenga, at 418.
In the instant case the attorney designated in the will was removed by the lower court. Our review of the record reveals that on the date of the hearing C.O. Brown was willing to fulfill the duty and obligation as attorney for the estate; we can find no evidence presented for adequate legal cause to remove him. C.O. Brown’s right to represent Mateal Rhodes Mangle’s estate should have been recognized and enforced. However, C.O. Brown has not appealed or answered the appeal of the decision of the trial court (removing him as attorney for the succession) on his own behalf. Therefore, because of the posture of the case before us, we are precluded from reviewing the propriety of his removal. C.O. Brown has been judicially removed as attorney for the succession by a court of competent jurisdiction by a judgment made final.
PRIVATE SALE OF SUCCESSION PROPERTY
The executrix, Patricia Mangle Sanders, proposed a private sale of the immovable succession property in order to reduce the assets to cash for the payment of succession taxes, debts, and legacies. La.C.C.P. Art. 3261. The terms of the sale consisted of $5,000.00 cash, as required by La.C.C.P. Art. 3263. One of the legatees, Katie J. Moore, filed an opposition to the sale. La.C.C.P. Art. 3283. However, the executrix complied with all of the requirements for the sale of the property and the trial judge determined in summary proceedings that the sale was in the best interests of the succession. La.C.C.P. Arts. 3281, 3282, and 3284. The trial judge did not *203 abuse his discretion in ordering the private sale of succession property at a price slightly lower than the appraised value (approximately $7,000.00) for the purpose of settling the estate. Duplechin v. Duplechin, 248 So.2d 631 (La.App. 3rd Cir.1971). There was no showing of any offer by anyone to purchase the property other than the forced heir, Audrey C. Mangle, nor was there any showing that the additional cost and delay of holding a public sale would be justified. Succession of Lawson, 408 So.2d 992 (La.App. 2nd Cir.1981).
SECURITY
The appellant alleges that the trial judge erred because he did not order the executrix to furnish bond following the appointment. Henry Rhodes, Jr., the person named by the testatrix as executor was not required to furnish security, as provided in the will. La.C.C.P. Art. 3153. However, La.C.C.P. Art. 3153 also provides that the person appointed dative testamentary executor (due to disqualification, removal, or death of the designated testamentary executor) is required to furnish the same security as is required of the administrator of an intestate succession under La.C.C.P. Art. 3151. La.C.C.P. Art. 3151 provides:
“Except as otherwise provided by law, the person appointed administrator shall furnish security for the faithful performance of his duties in an amount exceeding by one-fourth the total value of all property of the succession as shown by the inventory or descriptive list.
The court may reduce the amount of this security, on proper showing, whenever it is proved that the security required is substantially in excess of that needed for the protection of the heirs and creditors.”
See Sarpy and Duplantier, 1960 Amendments to the Civil Code Enacted in Connection with the New Code of Civil Procedure, 21 La.L.Rev., 383, 386 (1961). The minute entries in the transcript reflect that Patricia Mangle Sanders’ appointment as dative testamentary executrix was conditioned upon her qualifying. La.C.C.P. Art. 3159.[5] Although the trial court’s judgment determined Patricia Mangle Sanders’ status as duly authorized dative testamentary executrix, the judgment does not order security and there is nothing contained in the record to show that she furnished the security as required by La.C.C.P. Art. 3153. Failure to furnish security does not necessarily result in an invalid appointment or revocation of such appointment. Cf. Succession of Armentor, 426 So.2d 1366 (La.App. 3rd Cir. 1983) (the trial court there correctly allowed the correction of a clerical error .which stated an amount for security less than required by law); Succession of Smith, 219 So.2d 291 (La.App. 3rd Cir. 1969) (the court held in that case that the order appointing the administrator of the estate could not be set aside on the ground that the amount of bond fixed by the court and furnished by the administrator was less than required by law). The executrix can be afforded an opportunity to furnish a bond or special mortgage as security authorized by the court on an ex parte motion. La.C.C.P. Arts. 3153, 3157; see Smith, supra, at 293.
We find that the trial court committed error to the extent that it omitted an order requiring the appointed executrix to furnish security. Therefore, we remand this cause to determine whether Patricia Mangle Sanders furnished security when she qualified as dative testamentary executrix according to the provisions of La.C. C.P. Art. 3159 which require security upon taking the oath and the issuance of letters testamentary. In the event that the executrix did not furnish security, the trial court *204 is directed to conduct proceedings consistent with the opinion expressed herein.
DECREE
For the above and foregoing reasons, the judgment of the trial court is reversed insofar as it failed to order the dative testamentary executrix to furnish security and the cause is remanded to correct this error; the judgment of the trial court is affirmed in all other respects. Costs on appeal are assessed against appellant, Mrs. Louise Rhodes.
AFFIRMED in part; REVERSED in part; and REMANDED.
GUIDRY, J., concurs in result.

. At the time of decedent's death, the applicable provisions of La.C.C. Art. 1493 stated:
"Donations inter vivos or mortis causa can not exceed two-thirds of the property of the disposer, if he leaves, at his decease, a legitimate child; one-half, if he leaves two children; and one-third, if he leaves three or a greater number.
Under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.”

. We note that La.C.C.P. Art. 2974 provides:
"Appeals from orders or judgments rendered in succession proceedings shall be governed by the rules applicable to appeals in ordinary proceedings, except that an order or judgment confirming, appointing, or removing a succession representative, or granting an interim allowance under Article 3321 shall be executed provisionally, notwithstanding appeal.
The acts of a succession representative shall not be invalidated by the annulment of his appointment on appeal.”
See Succession of Kaffie, 273 So.2d 318 (La. App. 3rd Cir. 1973), application denied, 276 So.2d 701 (La.1973).

. Louise Rhodes is the only party who properly perfected an appeal.

. La.C.C.P. Art. 3182 provides:
"The court may remove any succession representative who is or has become disqualified, has become incapable of discharging the duties of his office, has mismanaged the estate, has failed to perform any duty imposed by law or by order of court, has ceased to be a domiciliary of the state without appointing an agent as provided in Article 3097(4), or has failed to give notice of his application for appointment when required under Article 3093.
The court on its own motion may, and on motion of any interested party shall, order the succession representative sought to be removed to show cause why he should not be removed from office. The removal of a succession representative from office does not invalidate any of his official acts performed prior to his removal.”

. La.C.C.P. Art. 3159 provides:
"After the person appointed or confirmed as succession representative has qualified by furnishing the security required of him by law, and by taking his oath of office, the clerk shall issue to him letters of administration or letters testamentary, as the case may be.
These letters, issued in the name and under the seal of the court, evidence the confirmation or appointment of the succession representative, his qualification, and his compliance with all requirements of law relating thereto.”