321 So.2d 908 (1975)
Gladys Burns SCHOEN et al.
v.
Ernest David BURNS.
Ernest David BURNS
v.
SUCCESSION OF Preston Allan BURNS et al.
Nos. 10338, 10339.
Court of Appeal of Louisiana, First Circuit.
September 2, 1975.
Rehearing Denied November 24, 1975.
*909 Louis B. Graham, New Orleans, for defendant-appellant in No. 10338 and plaintiff-appellant in No. 10339.
Maurice J. LeGardeur, Jr., Covington, for plaintiff-appellee in No. 10338 and defendants-appellees in No. 10339.
Before LANDRY, BLANCHE and YELVERTON, JJ.
LANDRY, Judge.
The appeals taken in these consolidated matters by Ernest David Burns (Appellant) present the principal issue of whether an action by a forced heir to annul, for alleged fraud and ill practice, a judgment probating a will which deprives the heir of his legitime, is an action to reduce an excessive donation which prescribes in five years pursuant to LSA-C.C. art. 3542, or whether such a suit is governed by LSA.C.C.P. art. 2004, which allows an action of nullity of judgment for fraud or ill practice within one year of discovery of the fraud or ill practice. Upon motion for summary judgment by Gladys Burns Schoen and Wade H. Burns (Appellees), the trial court concluded Article 3542, above, is controlling. So holding, the trial court dismissed Appellant's action to annul the judgment of possession rendered in the Succession of Preston Allan Burns, Jr. (Appellant's father) (Decedent), for alleged fraud and ill practice. Appellant charges that his existence and whereabouts were intentionally, deliberately, knowingly and willfully concealed from the court by Appellant's paternal aunt, Gladys Burns Schoen, who was placed in possession of Decedent's entire estate as universal legatee pursuant to Decedent's last will and testament. Also on Appellee's motion for summary judgment, the trial court rendered judgment in favor of Appellees in their companion suit against Appellant, decreeing that Appellant's right to reduce the legacy has prescribed, and that Appellant has no right, title or interest in any property belonging to Decedent's estate. We reverse both judgments rendered in these consolidated actions and remand both causes to the trial court for further proceedings.
Appellees' motions for summary judgment were tried below upon the petitions and answers filed in these consolidated actions, and the following documents, records and depositions: (1) The entire record in the Succession of Preston A. Burns, Sr. (father of Decedent); (2) The record of the Succession of Decedent, Preston Allan Burns, Jr.; (3) The marriage certificate showing the marriage of Decedent and Emily T. Commagere on August 24, 1934; (4) The record of the Succession of Mary Jane Edgar Burns, mother of Decedent and paternal grandmother of Appellant; (5) The record in an action by Preston Allan Burns, Jr., filed September 25, 1934, in St. Tammany Parish, seeking nullity of his marriage to Emily T. Commagere on the ground of Decedent's alleged lack of consent; (6) The record of a divorce action instituted by Emily T. Commagere Burns against Decedent in St. Tammany Parish on November 17, 1934, for divorce on grounds of adultery and rendition of judgment therein on November 19, 1934, in favor of Emily T. Commagere Burns, granting her custody of her unborn child; (7) Certified copies of the baptismal and birth certificates of Appellant Ernest David Burns, showing his birth on April 20, 1935, which certificates were filed on January 25, 1947, in the record of the suit wherein Emily T. Commagere Burns obtained a divorce *910 from Decedent; (8) The depositions of Gladys Burns Schoen, Wade H. Burns and Ernest David Burns, and (9) An Act of Sale by Decedent, Gladys Burns Schoen and Wade H. Burns, passed before James T. Burns, Notary, to Covington Bank and Trust Company in Liquidation, wherein Decedent is described as the divorced husband of Emily T. Commagere Burns.
As constituted, the record discloses that Preston Allan Burns, Jr. was born of the marriage between Preston Allan Burns, Sr. and Mary Jane Edgar Burns, of which union Wade H. Burns, Gladys Burns, John A. Burns and Robert M. Burns also were born. The Senior Burns died June 16, 1916, survived by his widow and four children. Mary Jane Edgar Burns and John A. Burns both predeceased Decedent.
Decedent was a life long resident of Covington, St. Tammany Parish. A house painter by trade, Decedent lived in the home of his sister, Gladys Burns Schoen, from the time of Decedent's marriage to Emily T. Commagere in August, 1934, until Decedent's death on July 13, 1953. Decedent's predeceased mother and brother, John A. Burns, also lived in Mrs. Schoen's home until her death on September 24, 1937, and his death in 1943.
Emily T. Commagere was employed as a secretary in Covington, Louisiana, at the time of her marriage to Decedent in August, 1934. The parties never lived together following their marriage. Decedent's action to annul the marriage, brought in September, 1934, was resisted by an exception to the jurisdiction of the St. Tammany Parish Court on the ground that defendant, Emily T. Commagere Burns had resided in Orleans Parish since October, 1933. No further proceedings were had therein.
On November 17, 1934, Emily Commagere Burns filed suit against decedent in St. Tammany Parish for an absolute divorce on the ground of adultery. The petition alleged that plaintiff was a resident of St. Tammany Parish. The petition recites that plaintiff was pregnant at the time the divorce action was filed, and that petitioner's husband, Preston Allan Burns, was father of the child she bore. Mrs. Burns further alleged that she renounced all claim to alimony for herself, and, insofar as the law allowed, relieved her husband of all responsibility for the care and maintenance of the unborn child. Additionally, Mrs. Burns prayed for custody of her child "in its present form and when born". Decedent opposed the divorce action in the form of a general denial. After evidence was taken, judgment was rendered on November 19, 1974, granting Emily T. Commagere Burns an absolute divorce on ground of adultery, and awarding her "permanent care, custody and control of her child, now unborn, and when born". On January 25, 1974, Emily T. Commagere Burns, presently married to Charles S. Malsbury, filed in the divorce proceeding in St. Tammany Parish, a certified copy of a birth certificate showing the birth on April 20, 1935, of Appellant Ernest David Burns, issue of the marriage between Decedent and Emily T. Commagere Burns, said birth certificate having been issued August 9, 1946.
Decedent died July 13, 1953, leaving an olographic will dated July 18, 1949. The testament named Mrs. Schoen as Decedent's sole and universal legatee. On January 22, 1954, Mrs. Schoen presented the will for probate. The petition for probate avers Decedent's death and being survived only by Mrs. Schoen and one brother, Wade H. Burns. Mrs. Schoen further alleged that Decedent left no ascendants or descendants, and that Decedent never adopted any person or persons nor was Decedent adopted by anyone. The petition is supported by affidavits of two persons, and also the unqualified affidavit of Mrs. Schoen that all allegations therein are true and correct. The petition does not mention Decedent's marriage to or the divorce obtained by Emily T. Commagere Burns, neither does it mention possible absent heirs. On January 22, 1954, Decedent's *911 will was probated. On February 9, 1954, judgment was rendered in Decedent's succession proceedings recognizing Mrs. Schoen as Decedent's sole and universal legatee and, as such, recognizing her as owner and sending her into possession of Decedent's entire estate, including an undivided one-third (1/3) interest in certain real property inherited by Decedent from the estates of Decedent's predeceased parents and brother, John A. Burns.
The depositions show that Appellant never knew, saw or met his father, Preston Allan Burns, Jr. After the marriage of his parents, Appellant's mother went to New Orleans, Louisiana, where she lived with her parents. Appellant resided in New Orleans, Louisiana, mostly in the home of his maternal grandmother. When Appellant's father died in 1953, Appellant was then 18 years of age and living with his grandmother at 728 Pine Street, New Orleans. In 1955, Appellant left New Orleans, lived in Chicago, Illinois, for about one month, and then moved to New York, New York. Appellant returned to New Orleans twice during the years 1955 and 1956. On one such visit, in the summer of 1956, he was shown a picture of his father and an obituary notice which his grandmother cut out of the obituary column of a newspaper. The obituary merely gave the date of Decedent's death, and stated that at the time of his death, he lived in the home of his sister, Mrs. Schoen. The obituary did not mention that Decedent was ever married and failed to mention that Decedent was survived by a son. Appellant's deposition indicated that he was never told anything about his father, and never knew whether his father was alive or that his father had left an estate. He stated that from the obituary notice, which recited that his father resided with his sister (Mrs. Schoen) at the time of death and was survived only by Mrs. Schoen and a brother, Wade H. Burns, Appellant surmised his father died leaving no estate. He explained it was for this reason that he made no further inquiry into the matter at that time. He also deposed he had no knowledge of his father leaving an estate until his receipt of a letter dated October 9, 1973, from Appellees' attorney, containing the request that Appellant execute the enclosed formal renunciation of Decedent's estate.
Mrs. Schoen's deposition is simply that she knew her brother, Preston Allan Burns, Jr., was married to Emily T. Commagere, but that the couple never lived together, and that she was unaware that a child was born of the marriage. She acknowledged that in her father's succession, opened in 1935, in which she appeared as an heir, and also in a sale which she signed in 1938, it was recited that Preston Allan Burns, Jr. was the divorced husband of Emily T. Commagere. She denied any intent or attempt to defraud Appellant of his legitime, or to mislead the Court or conceal the fact of Appellant's existence from the Court in Decedent's succession.
Wade H. Burns' deposition conceded that he knew his brother had a child, and that said fact was known "all over Covington." He also stated that he was living near Covington at the time of the marriage and thereafter. He also stated that his brother, Preston, told him that Preston married Emily T. Commagere because Preston knew a baby was coming.
The trial court found that Appellant became aware of Decedent's death shortly after Appellant reached majority and more than five years before Appellant instituted his action of nullity. The court reviewed jurisprudence which holds that a testator may dispose of his property to the prejudice of forced heirs which excessive donations are not null, but merely reducible to the extent of infringement of the legitime, provided an action for reduction is instituted within five years of date of probation of the will or, in the case of minors, within five years of attainment of majority. The trial court also held that Mrs. Schoen was not guilty of any fraud or ill practice. Alternatively, the trial court held that even if *912 Mrs. Schoen were guilty of fraud, Appellant's action to reduce the excessive donation was prescribed in five years as provided by LSA-C.C. art. 3542. The trial court apparently ignored and made no reference to LSA-C.C.P. 2004, which we hereinafter discuss.
We find that this case poses the question of does a forced heir have a cause of action to annul an ex parte judgment of possession depriving him of his legitime, rendered in a succession proceeding in which his existence is concealed from the Court by fraud or ill practice by a party to the succession proceeding, separate and distinct from the heir's action to reduce an excessive testamentary donation? We also answer the inquiry in the affirmative.
We find the following codal provisions pertinent:
LSA-C.C.P. art. 2004:
"A final judgment obtained by fraud or ill practices may be annulled.
An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices."
LSA-C.C. art. 1502:
"Any disposal of property, whether inter vivos of mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum."
LSA-C.C. art. 3542:
"The following actions are prescribed by five years:
* * * * * *
That for the reduction of excessive donations.
* * * * * *
This prescription only commences against minors after their majority."
In the action for reduction of an excessive testamentary disposition, as authorized by Article 1502, above, the remedy of the forced heir is limited to recovery of the legitime or its value. In this action, however, Appellant does not seek to reduce the donation to his legitime. Appellant seeks annulment of the judgment of possession because of alleged fraud and/or ill practice perpetrated upon the court in the succession proceedings, in deprivation and derogation of Appellant's rights. Otherwise stated, we find that the action to annul for fraud is predicated upon an alleged willful abuse of the legal processes to the detriment of the person asserting fraud or ill practice. That Appellant's recovery may be limited to his legitime is a matter of no moment under the circumstances.
In this regard, we cite with approval the following language in St. Mary v. St. Mary, 175 So.2d 893 (1965), in which the provisions of Article 2004 were held applicable to a judgment obtained merely through ill practice, even though the decree innocently operated to deny a person's rights:
"As to the former (or(a)) contention, under the jurisprudence the fraud which may justify annulling a judgment under LSA-CCP Art. 2004 is not only conduct which is fraudulent in the strict sense of the term. `The article is not limited to cases of actual fraud or intentional wrongdoing but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment, of some legal right, and where the enforcement of the judgment would be unconscientious and inequitable.' Tapp v. Guaranty Finance Co., La.App. 1 Cir., 158 So.2d 228, 233 (244), certiorari denied, 245 La. 640, 160 So.2d 228.
"Official Revision Comment b. to LSA-CCP Art. 2004 expressly states the desire to retain the judicial discretion *913 obtaining under the former jurisprudence to afford relief against judgments irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of the legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable.' See, e.g., Succession of Gilmore, 157 La. 130, 102 So. 94 (1924), Tapp v. Guaranty Finance Co. (1962), cited above, and Sturgis v. Gulfco Finance Co. (1962) (La.App., 147 So.2d 782), cited above, for discussion of jurisprudence upon which this principle is based."
We note to the same effect Johnston v. Smith, 284 So.2d 149 (1973), and authorities therein cited.
Appellees rely upon Janney v. Calmes, 212 La. 756, 33 So.2d 510 (1947), and Martin v. White, 219 So.2d 219 (La.App.1969) in support of the position that an ex parte judgment of possession is not subject to an action of nullity. We find these authorities inapposite. Janney, above, did not concern an action to annul an ex parte judgment of possession. The issue in Janney, above, was whether the trial court properly dismissed plaintiff's action on pleas of equitable and judicial estoppel. On appeal, defendants filed exceptions of no cause and no right of action based on the ground that the judgments assailed were prima facie valid, final and definitive and therefore insusceptible of annulment or amendment save by a direct action for that purpose. In disposing of the exceptions, the Supreme Court noted that ex parte judgments of possession were not definitive decrees and were therefore not subject to an action of nullity. Clearly, the Supreme Court's decision in Janney, above, was based upon La.Code of Practice Article 607, which then provided:

"A definitive judgment may be annulled in all cases where it appears that it has been obtained through fraud, or other ill practices on the part of the party in whose favor it was rendered; * * *." (Emphasis supplied.)
However, LSA-C.C.P. art. 2004 allows the action of nullity as a vehicle for challenging any final judgment, and does not include the former Code of Practice requirement that a judgment be definitive to be vulnerable to the action of nullity. An ex parte judgment probating a will and sending the legatees thereunder into possession of a decendent's estate is unquestionably a final judgment, LSA-C.C.P. art. 1841, although not a definitive judgment inasmuch as it may not be urged as ground for a plea of res judicata. Additionally, we note that an action of nullity of a final judgment is a separate remedy independent of all other actions for judicial relief, and may be availed of notwithstanding the right of appeal and without adverse effect upon one's right of appeal. LSA-C.C.P. arts. 2005 and 2006.
Martin, above, citing only Janney, above, as authority, held that an ex parte judgment of possession in a succession proceeding was not subject to an action of nullity since it was not a definitive judgment. The ruling in Martin, above, must yield to the statutory change effected by LSA-C. C.P. art. 2004 which presently makes no requirement that a judgment be definitive, but only that it be final to be subject to the action of nullity for fraud or ill practice.
Citing Draper v. Van Leer, 197 La. 259, 1 So.2d 513 (1941); Succession of Smith, 182 La. 389, 162 So. 21 (1935); In Re Andrus, 221 La. 996, 60 So.2d 899 (1952); Thompson v. Thompson (On Rehearing), 211 La. 468, 30 So.2d 321 (1947), and Succession of Dancie, 191 La. 518, 186 So. 14 (1939), Appellees contend the only action available to a forced heir prejudiced by an excessive testamentary disposition is an action to reduce the excessive donation. On this premise, Appellees argue that Appellant's petition, though labeled an action for nullity, is in effect an action to reduce an *914 excessive testamentary disposition which impinges upon the legitimate of a forced heir. Our consideration of these authorities disclose that all may be distinguished from the case at hand. For example, in Draper, above, an attorney was appointed to represent absent heirs. No allegation of fraud was made therein. Andrus, above, involved claims of children disinherited in their parents' wills, and whose parents made inter vivos donations to other children. No issue of fraud or bad faith was raised in Andrus, above.
We find the prescriptive period applicable herein to be that of one year from discovery of the alleged fraud or ill practice as prescribed in LSA-C.C.P. art. 2004. For that reason, we enter into no discussion of LSA-C.C. art. 3542, since we find it inapplicable in this instance.
In our judgment, the timeliness of Appellant's action of nullity must be resolved in the light of two factual determinations, namely: (1) Whethere the assailed judgment was obtained by either fraud or ill practice, and (2) if so, whether Appellant instituted his action within one year of discovery thereof.
From the pleadings, documents and depositions of record, we find that there are genuinely disputed material facts relating to Mrs. Schoen's alleged knowledge of Appellant's existence at the time of probate of Decedent's will as well as dispute concerning other facts material to the issue of whether Appellant's existence was knowingly and deliberately concealed from the Court in Decedent's succession. We also note genuine dispute as to material facts bearing on the question of whether Appellant instituted his action within one year of discovery of the alleged fraud and ill practice. Under these circumstances, a motion for summary judgment may not be substituted for trial of these issues on their merits. LSA-C.C.P. art. 966; Bodcaw Company v. Enterkin, 273 So.2d 325 (La.App.1973).
In passing upon a motion for summary judgment, the function of the Court is not to resolve genuinely disputed material facts, but solely to determine whether or not there is in fact a genuine dispute of material fact. Bodcaw, above; Acadia-Vermilion Rice Irrigating Co. v. Broussard, 185 So.2d 908 (La.App.1966). In this instance, the trial court erred in failing to find the existence of a genuine dispute regarding material facts.
The judgment of the trial court is reversed and set aside and this matter remanded to the lower court for further proceedings consistent with the views herein expressed; all costs of this appeal to be paid by Appellees, Gladys Burns Schoen and Wade H. Burns.
Reversed and remanded.