412 So.2d 692 (1982)
SUCCESSION OF Archie G. HEARN.
Mallery Clotille Hearn MUSSELWHITE, Plaintiff-Appellee,
v.
Mamie Slack HEARN, et al., Defendant-Appellant.
Nos. 14801, 14802.
Court of Appeal of Louisiana, Second Circuit.
March 2, 1982.
Rehearing Denied April 12, 1982.
*693 Kitchens, Benton, Kitchens & Pearce by John B. Benton, Jr., Minden, Voltz & Ware by Gus Voltz, Jr., Alexandria, for plaintiffs-appellees.
Campbell, Campbell & Johnson by John T. Campbell, Minden, for defendant-appellant.
Before HALL, JASPER E. JONES and NORRIS, JJ.
En Banc. Rehearing Denied April 12, 1982.
JASPER E. JONES, Judge.
In these consolidated cases the defendant, Mamie S. Hearn, appeals from a judgment which annulled a judgment of possession insofar as it failed to recognize Mallery Hearn Musselwhite, the plaintiff, as Archie G. Hearn's only child, and which judgment sends plaintiff into possession of one-third of the property which belonged to Archie G. Hearn at his death, awards a money judgment against the defendant in the amount of $11,043.92, subject to a credit of $442.18, and orders defendant to account for all sums received or owing to Mamie S. Hearn since March 1, 1981 attributable to the properties adjudicated to the plaintiff.
The present controversy springs from the facts set out below.
In 1919 Myrtice Ruth Hogue became pregnant by Archie G. Hearn. Myrtice and Archie were married in Texas during her pregnancy, but resided together only a short time. On December 24, 1919, Myrtice gave birth to Archie's child, a girl, whom she named Mallery Clotille Hearn.
In early 1920 Archie sued for a judicial separation from Myrtice in Webster Parish. There was no contact between Archie and Myrtice or his daughter after the January 1920 trial of his separation action. Archie did not obtain a judicial separation. The marriage was terminated in 1923 when Myrtice obtained a Texas divorce.
In 1934 Archie married Mamie Slack, the defendant, with whom he lived until his death on September 9, 1973. Archie's olographic testament named his wife as executrix and bequeathed to her as universal legatee all of his estate.
*694 On September 20, 1973, the will was probated and Mamie was confirmed as executrix. The first paragraph of Mamie's verified petition to probate the will alleges:
"Her husband, Archie G. Hearn, a resident and domiciliary of Webster Parish, Louisiana, died in Shreveport, Louisiana on September 9, 1973, leaving surviving him no lawful ascendants or descendants."
Attached to the petition was an affidavit signed by two persons, one of whom was John W. Slack, defendant's brother, and the other was defendant's attorney. The affidavit read as follows:
"BEFORE ME, the undersigned authority, personally came and appeared (defendant's attorney) and JOHN W. SLACK, who, being each duly sworn, did depose and say that they were well and truly acquainted with the late Archie G. Hearn, who died on September 9, 1973; that said decedent was married once, and only once, to Mamie Slack, with whom he was living and residing at the time of his death, and who yet lives. That decedent left surviving him no lawful ascendants or descendants, either by blood or adoption.
Further, deponents sayeth not."
On February 13, 1975, Mamie filed a verified petition for possession wherein she refers the court to the proceedings earlier filed and in which the allegation that her husband had died without ascendants or descendants was repeated. The affidavit of verification signed by appellant attached to the petition to probate the will to which the affidavit of her attorney and her brother was attached, and the affidavit signed by Mamie attached to the petition for possession, each stated that she had read the petition and the allegations were true and correct to the best of her knowledge, information and belief. A judgment of possession was rendered placing Mamie in possession of her deceased husband's property on February 13, 1975.
Mallery did not learn of her father's death until February 20, 1979. The next day she began making the inquiries which led to her discovery of the circumstances surrounding the disposition of her father's property.
On November 23, 1979, Mallery filed a petition in the succession proceedings which alleged the facts surrounding her relationship to her father, that Mamie knew of those facts but failed to attempt to contact her after his death, and that her father's will was invalid and, alternatively, that the legacy to Mamie should be reduced by one-third. On February 21, 1980 by amended petition these allegations were supplemented with allegations that the judgment probating the will and the judgment of possession had been obtained on false affidavits and false allegations of a verified petition and should be annulled on grounds of fraud and ill practices and that Mamie knew or should have known of her whereabouts but failed to contact her, which amounts to fraud and ill practices.[1]
On February 19, 1981 Mallery filed a separate action against Mrs. Hearn which primarily repeated the above mentioned allegations as to fraud and ill practices.[2]
The defendant interposed exceptions of prescription, which was referred to the merits, *695 and no cause of action, which was overruled. After a trial on the merits the district judge overruled the exception of prescription and entered the judgment from which defendant appeals. The defendant sets out four specifications of error:
(1) That an ex parte judgment of possession is not subject to an action of nullity;
(2) That it was error to find that false affidavits, when made in good faith, constitute "fraud or ill practices" which justify annulling a judgment in an ex parte probate proceeding;
(3) That it was error to fail to consider whether these actions to annul were not in reality actions for the reduction of an excessive donation; and
(4) That it was error to fail to find that these actions, as actions for the reduction of an excessive donation, were barred by prescription under LSA-C.C. art. 3542.[3]
Appellant argues that an ex parte judgment of possession is not subject to the action of nullity. She bases this contention on the cases of Janney v. Calmes, 212 La. 756, 33 So.2d 510 (1947), and Martin v. White, 219 So.2d 219 (La.App. 1st Cir. 1969).
This argument was considered and rejected by the First Circuit in Schoen v. Burns, 321 So.2d 908 (La.App. 1st Cir. 1975), where the court correctly disposed of it as follows:
".. LSA-C.C.P. art. 2004 allows the action of nullity as a vehicle for challenging any final judgment, and does not include the former Code of Practice requirement that a judgment be definitive to be vulnerable to the action of nullity. An ex parte judgment probating a will and sending the legatees thereunder into possession of a decedent's estate is unquestionably a final judgment, LSA-C.C.P. art. 1841, although not a definitive judgment inasmuch as it may not be urged as ground for a plea of res judicata. Additionally, we note that an action of nullity of a final judgment is a separate remedy independent of all other actions for judicial relief, and may be availed of notwithstanding the right of appeal and without adverse effect upon one's right of appeal. LSA-C.C.P. arts. 2005 and 2006." Id. at 913 (emphasis in original.)
As did the court in Schoen, we conclude that under the provisions of the Code of Civil Procedure an ex parte judgment of possession may be attacked through the action of nullity. See e.g. David v. David, 347 So.2d 885 (La.App. 3d Cir. 1977); Succession of Davis, 347 So.2d 906 (La.App. 3d Cir. 1977).
Having found that the judgment of possession is subject to an action of nullity we address appellant's contention that there was no "fraud or ill practice" which justifies the annulment of the judgment of possession.
The trial court found, and the evidence overwhelmingly supports the finding, that Myrtice Hogue and Archie G. Hearn were married and that Mallery Hearn Musselwhite was their child. The evidence also shows that, by her own admission, Mamie Hearn knew of that marriage and that it had been a "shotgun" marriage brought on by the pregnancy of Myrtice Hogue.[4] Mrs. Hearn also testified that sometime in 1974 she was told that shortly after her husband's death there had been a woman in a local store claiming to be her husband's daughter. Mrs. Hearn testified that her husband had told her that Myrtice had the child at the time he married her and that it was not his; however, the totality of her testimony established that she knew a female child was born of the marriage between *696 Archie and Myrtice. In light of Mrs. Hearn's admitted knowledge and the fact that she was a teenage resident of the Shongaloo community at the time of the events between Archie and Myrtice, which the record shows were the subject of much talk in the area, occurred, it strains credulity to believe that she did not have substantial knowledge of the true facts of the events between Archie and Myrtice, including the birth of their child.
The record also shows that John Slack, appellant's brother and one of the affiants, knew, from what he had heard while growing up in Shongaloo, of the relationship between Archie and Myrtice and the birth of their child.
Thus, the issue is: does it constitute "fraud or ill practices" under LSA-C.C.P. art. 2004[5] to obtain a judgment by the use of a verified petition which the plaintiff knows or has reason to strongly suspect contains false material allegations and an affidavit made by an affiant who knew it to be false?
The petition for possession must be verified and its allegations proven in accord with LSA-C.C.P. arts. 3003 and 3032. Article 3003 requires that death, jurisdiction, marriage of the spouses and relationship of the petitioners to the deceased be proved in accord with LSA-C.C.P. arts. 2821-2823. Articles 2821-2823 allow proof of death, jurisdiction, marriage and relationship of heirs to be proved by affidavits made by two persons having knowledge of the facts sworn to.
Here the verified petition for possession alleged that the decedent left no ascendants or descendants. The appellant attempted to prove this by an affidavit which she had previously submitted in conjunction with the petition for probate. The affidavit not only contained the false declaration with regard to descendants, but also falsely declared that decedent had been married but once. One of the affiants, John W. Slack, knew of the falsity of the affidavit when he made it.[6]
A judgment can be annulled for being based partly on false affidavits. Brown v. South Street Lumber Company, 195 So.2d 650 (La.App. 3d Cir. 1967); White v. Exxon Corp., 354 So.2d 1085 (La.App. 2d Cir. 1978). When a party deliberately withholds information in order to obtain an uncontested judgment it constitutes an ill practice for which that judgment may be annulled. Brasher v. Brasher, 372 So.2d 752 (La.App. 4th Cir. 1979).
In the case of David, supra, where false affidavits were used to obtain a judgment of possession the court stated:
"Ignace David's children here were aware of the existence of the will [the will referred to by the court bequested all decedent's property in Florida to decedent's fiance, Sigrid Ferrara, and the remainder of his estate to his three children] and executed an affidavit that they were the sole heirs to obtain an ex parte judgment of possession. An action of nullity is clearly appropriate. LSA-C.C.P. art. 2004..." Id. at 888.
In the Succession of Davis, supra, an ex parte judgment of possession recognizing the decedent's two sons as his sole heirs was annulled under the provisions of LSA-C. C.P. art. 2004 because the affidavits presented to the court to obtain the judgment contained false information to the effect that the decedent left no will.
In the case of Schoen, supra, the court recognized that a forced heir has a cause of *697 action to annul an ex parte judgment of possession depriving him of his legitime, which was obtained by false affidavits which concealed the existence of the forced heir, which were submitted to the court by a party to the succession.
The false allegations in the petitions filed in these proceedings verified by affidavits signed by appellant and the false allegations in the affidavit signed by appellant's brother constitute fraud and ill practices. They were relied upon by the court in rendering the ex parte judgment of possession and for that reason could form the basis for annulling the judgment of possession insofar as it deprived plaintiff of her legitime.
The judgment appealed did not annul the judgment probating and ordering the execution of the will and this was correct because this judgment was not obtained by "fraud or ill practices" and for that reason is not subject to the nullity action under LSA-C.C.P. art. 2004. Though the petition to probate and the affidavits submitted with it contained the same false allegations and statements submitted to obtain the judgment of possession, these allegations and statements were not necessary to obtain the judgment probating the will and ordering its execution. Only death and jurisdiction is required to be proven as a condition precedent to the probating of the will. LSA-C.C.P. art. 2852.[7]
The trial court's judgment which annulled the judgment of possession to the extent that it infringed upon plaintiff's legitime, necessarily had the effect of reducing the bequest to appellant of all decedent's property to two-thirds of decedent's property. The judgment therefore reduced an excessive donation.
Appellant had filed in the trial court an exception of prescription of five years based upon the provisions of LSA-C.C. art. 3542[8] which provides that actions to reduce excessive donations prescribe in five years. The trial judge referred this exception to the merits and after trial in written reasons for judgment found that the only issue of prescription was contained in LSA-C.C.P. art. 2004 which requires the action of nullity to be instituted within one year of the discovery by the plaintiff in the nullity action of the fraud and ill practice. The trial court relied upon the decision of Schoen, supra, wherein the court said:
"We find the prescriptive period applicable herein to be that of one year from discovery of the alleged fraud or ill practice as described in LSA-C.C.P. art. 2004. For that reason, we enter into no discussion of LSA-C.C. art. 3542, since we find it inapplicable in this instance.
In our judgment, the timeliness of Appellant's action of nullity must be resolved in the light of two factual determinations, namely: (1) whether the assailed judgment was obtained by either fraud or ill practice, and (2) if so, whether Appellant instituted his action within one year of discovery thereof. (Id. at 914)
. . . . .
"We find that this case poses a question of does a forced heir have a cause of action to annul an ex parte judgment of possession depriving him of his legitime, rendered in a succession proceeding in which his existence is concealed from the Court by fraud or ill practice by a party to the succession proceeding, separate and distinct from the heir's action to reduce an excessive testamentary donation? We also answer the inquiry in the affirmative." (Id. at 912.)
The court in Schoen reversed a summary judgment which held that the plaintiff, a forced heir, had lost his cause of action to reduce an excessive donation because he instituted his suit more than five years after the will was probated. The Schoen case *698 held that if the plaintiff could establish the judgment was obtained by fraud and ill practice and if he instituted his suit within one year of his discovery of the fraud and ill practice, that he could recover his legitime. The rationale of the court was that the action of nullity includes within it the right to claim the legitime and that the action of nullity is a separate and distinct cause action from the action to reduce an excessive donation. Schoen further holds that the action of nullity is subject only to the one year prescriptive period set forth in LSA-C.C.P. art. 2004 and is totally unaffected by the five year prescription contained in LSA-C.C. art. 3542.
We construe Schoen as interpreting two provisions of the law containing conflicting prescription periods as applicable to the facts presented there which bear much similarity to the facts developed in the trial of this case.
The appellant strongly contends that Schoen is not sound law and that the trial court erred in relying upon it. He contends that once the judgment of possession is annulled in an action filed within one year of the discovery of the fraud, that the excessive donation still remains effective until it is reduced. He then contends that action to reduce must have been filed within five years of the probation of the will. The thrust of his contention is that Schoen erred in finding the actions of nullity and the action to reduce combined in one action to be controlled by LSA-C.C.P. art. 2004 prescription.
We believe Schoen to contain a reasonable and sound solution to the situation where the forced heir seeks the return of his legitime more than five years after a will is probated and within one year of his discovery of the fraud. We, however, recognize that Schoen is a decision of the First Circuit and that the rationale contained in it has never been reviewed by our supreme court. We further note that appellant has cited numerous cases decided by the supreme court which have held actions to reduce excessive donations prescribe in five years from the date the will is probated. We, however, find the cases relied upon by appellant can be of no comfort to her because the supreme court has recognized that a forced heir may sue for his legitime more than five years after the will is probated if he has been deprived of it by fraud of which he was unaware due to no neglect on his part.
In the case of Draper v. Van Leer, 197 La. 259, 1 So.2d 513 (1941), a suit by a forced heir against an executrix, the court stated:
"The plaintiff alleges the exercise of diligence in trying to locate his father, and fraud and concealment on the part of defendant, Mrs. Van Leer. These allegations, if proven, would have the effect of exempting plaintiff from the prescription under Article 3542 of the Revised Civil Code. The rule was stated in Cox v. Von Ahlefeldt, supra [105 La.] on page 586 [30 So. on page 216], as follows:
`* * * Those who claim exemption from prescription by reason of ignorance resulting from fraud must allege and show that such ignorance was neither willful nor negligent.'" Id. at 516.
The appellant qualified as executrix of the succession on the same date the will was probated and as executrix had a fiduciary relationship to the plaintiff. LSA-C. C.P. art. 3191; Langendorf v. Administrators of Tulane Ed. Fund, 361 So.2d 905 (La.App. 4th Cir. 1978).
On the very date the executrix qualified, she entered into a scheme to conceal the existence of plaintiff by failing to inform her succession attorney or the court of the existence of the plaintiff.
The plaintiff, who had lived in Houston for many years, had not been in Webster Parish for many years prior to her father's death. The evidence establishes that the decedent had never shown any interest in the plaintiff, nor made any provision for her support during her childhood, even though she spent most of her childhood and much of her early adult life only a few miles from decedent's home. There was further evidence in the record that *699 indicated decedent had a dangerous reputation and this discouraged plaintiff from attempting to have any relationship with him. The fact that she did not frequently check in the community where her father resided in Webster Parish to determine the state of his health or the probable time of his possible demise, cannot be considered as neglect upon her part in the discovery of his death and the fraud in the decedent's succession proceedings. The record reflects that plaintiff discovered her father's death on February 20, 1979 in a telephone conversation with a cousin and that she immediately sent for and obtained a certified copy of her father's succession proceeding about February 26, 1979 and instituted these proceedings within less than one year. We conclude that appellant's fraud in the concealment of the plaintiff, which commenced on the date the will was probated, suspended the running of prescription under LSA-C.C. art. 3542 until the date that plaintiff discovered the fraud, which was on or about February 26, 1979. Under these circumstances appellants' plea of prescription can clearly have no merit.
For the reasons stated we conclude the judgment appealed is correct.
While the trial court did not discuss plaintiff's alternative theory of recovery, we find that she would have been entitled under this theory of recovery to the same results reached by the trial court under the nullity theory. Simply stated, plaintiff's alternate theory of recovery is as follows:
(1) that appellant, as executrix, had certain duties;
(2) that one of those duties was to inform forced heirs of their claims and allow them an opportunity to assert those claims;
(3) that appellant breached that duty; and
(4) that appellant is liable to her because of that breach.
Appellant contends that we may not consider this theory because to do so would be to improperly consider the pleadings amended by unobjected to evidence which was admissible on other issues. We disagree.
In plaintiff's petition in the succession proceedings she made the following allegations:
"That the defendant, Mamie Slack Hearn, knew that the decedent had been previously married to Myrtice Ruth Hogue and the defendant knew that petitioner was born during that marriage; however, defendant made no attempt to contact petitioner after the decedent's death, and she petitioned this court alleging that the decedent left no descendants."
These allegations present the essential facts underlying the appellant's alternative theory except for Mrs. Hearn's status as executrix which is a matter of record located elsewhere in the succession proceeding.
Louisiana has repudiated the theory of the case doctrine of the common law and it is not necessary for a litigant to plead a theory of recovery. Royal Furniture Company of Baton Rouge v. Benton, 260 La. 527, 256 So.2d 614 (1972); Cox v. W. M. Heroman & Co., Inc., 298 So.2d 848 (La. 1974); Albritton v. McDonald, 363 So.2d 925 (La.App. 2d Cir. 1978), writ refused 366 So.2d 561 (La.1979). Further, it is the duty of this court to render any judgment which is just, legal and proper upon the record on appeal. LSA-C.C.P. art. 2164.
The only allegation missing from the petition in this case concerning the alternate theory of recovery is the allegation of a legal conclusion to specifically point up this basis for recovery. However, such an allegation is not required. Louisiana has a system of fact pleading in which the litigants are not required to plead a theory of recovery. LSA-C.C.P. art. 854; Albritton, supra. The appellee's alternate theory of recovery is properly before us and we will consider it.
The crux of appellee's alternate theory of recovery is the existence of a duty on the part of an executor to notify heirs of the existence of their claims and to allow them an opportunity to assert them. For the proposition that there is such a duty appellee relies on Langendorf, supra.
*700 In Langendorf the decedent's will left his entire estate to defendant and named the defendant as executor. The estate included property in Florida which the will could not pass due to being in invalid form under Florida law. It was decided that the defendant would obtain the property by not paying the taxes on it and buying it when it was sold at a tax sale. While it was in the process of executing this scheme, defendant learned that the decedent had legal heirs who would be entitled to the Florida property. However, the executor did not notify those heirs and continued with its scheme and eventually bought the property at a tax sale. The defendant later lost the property through its negligent failure to pay the taxes.
The heirs subsequently learned of the occurrences and sued the executor. The court in Langendorf said:
"Defendant had the duty at least to inform the legal heirs of the claim to the property and to preserve the property for a reasonable time thereafter so that the heirs could pursue their rights. And certainly defendant had a duty not to contrive a method of depriving the legal heirs of their claim to ownership." Id. at 908-909.
The court found that the defendant had breached its duty and owed the heirs the return of the land, but awarded only the value of the land since defendant had lost it. The court found the prescriptive period applicable to a claim against a fiduciary to be ten years.
A succession representative is a fiduciary. LSA-C.C.P. art. 3191. An executor owes his duties to legatees, creditors, and heirs. Succession of Anderson, 323 So.2d 827 (La.App. 4th Cir. 1975); Succession of Rosenthal, 369 So.2d 166 (La.App. 4th Cir. 1979); Langendorf, supra.
We find that an executor or executrix owes a duty to forced heirs. We hold that when an executrix knows or has reason to strongly suspect that there are persons with claims as forced heirs whose legitime is impinged by bequests in the will, she has a duty to make a diligent effort to learn the identity of and inform such persons of the death of the decedent and their possible claims.
The record is clear that Mrs. Hearn had information from which she knew or should have known that there was at least one person who was decedent's child and forced heir. The record shows that Mrs. Hearn made no effort to discover the identity of and contact that person. On the contrary, she concealed the existence of the forced heir from her attorney and the court. By conducting herself as she did, defendant breached the duty she owed the plaintiff, Mallery Musselwhite, the decedent's child.
The evidence indicated the ease with which Mallery Musselwhite could have been contacted. Charles Hearn, the decedent's nephew who lived in the same community with appellant, testified that when his wife became interested in genealogy she wanted to contact Archie's daughter, whose existence was well known in the Hearn family. Mrs. Charles Hearn contacted the Harps in nearby Haynesville, and they gave her Mallery Hearn Musselwhite's Houston address. This shows that plaintiff could have been located easily through general inquiry in Webster Parish.
The appellee is entitled to the ownership of her forced portion of her father's estate's property that is still in the hands of the executrix, to one-third of the value of any property of the estate no longer in the hands of the executrix, and one-third of all revenues received by or due to executrix from the estate property. Langendorf, supra.
For the foregoing reasons, the judgment is AFFIRMED at appellant's cost.
NOTES
[1] The petition in the succession proceeding requested the following relief:

(a) the annulment of the will;
(b) the annulment of the judgment of possession; and
(c) that Mallery be recognized as Archie's only child and placed in possession of one-third of the property possessed by him at his death.
The demands for annulment of the will were the subject of a successful motion to strike by defendant.
[2] The petition in the separate action requested the following relief:

(a) the annulment of the judgment of possession;
(b) that Mallery be recognized as Archie's only child;
(c) that Mallery be declared owner and sent into possession of one-third of the property possessed by Archie at his death;
(d) that defendant account for all income received from succession property since her husband's death; and
(e) for judgment against defendant for one-third that amount.
[3] LSA-C.C. art. 3542: "The following actions are prescribed by five years:

That for the nullity or rescission of testaments or other acts.
That for the reduction of excessive donations.
That for the rescission of partitions and guarantee of the portions.
This prescription only commences against minors after their majority."
[4] There is no indication in the record that a shotgun or any form of intimidation was used to coerce Archie into marrying Myrtice. The term "shotgun" marriage is used only to describe the conditions which precipitated the wedding, namely, Myrtice's pregnancy.
[5] LSA-C.C.P. art. 2004"A final judgment obtained by fraud or ill practices may be annulled.

An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices."
[6] We note that there is no indication in the record that appellant's attorney was aware of the true facts at the time he executed the affidavit. He based the affidavit on his friendship with and knowledge of appellant and Archie Hearn since 1935. Appellant's attorney was as badly deceived as everyone else by his client's and her brother's misrepresentations. Appellant testified that she never told her attorney of her knowledge of her husband's former marriage or about the child born of that marriage.
[7] LSA C.C.P. art. 2852"The petitioner shall submit with his petition evidence of the death of the deceased, and of all other facts necessary to establish the jurisdiction of the court..."
[8] LSA-C.C. art. 3542"The following actions are prescribed by five years:

. . . . .
That for the reduction of excessive donation;
. . ."