COOKS, J.,
concurring.
hi agree with the majority’s finding that the content of Gisclaire’s ex parte communication with the trial judge was not simply administrative or managerial in nature. The communication raised legitimate concerns regarding Gisclaire’s suitability to continue to serve as a juror. For me, this fact alone merits annulment of the judgment. The attorneys _ should have been informed of Gisclaire’s communication with the judge and they should have been afforded the opportunity to explore the nature and extent of Gisclaire’s ability to be a fair and impartial juror in light of the issues she made known to the trial judge. Due process required no less. The majority finds the trial judge acted improvidently in instructing Giselaire not to reveal her concerns to fellow jurors and to keep the information from the attorneys. I agree. Despite this finding the majority still believes an unresolved question of material fact exists regarding whether the trial judge’s, failure to inform Plaintiff of Gis-claire’s communication constitutes an ill practice under the code of civil procedure. I believe this is a question of law. The only unresolved question as I see it is whether the ill practice here is unconscionable. Although I find it hard to imagine what additional facts may be obtained on remand of the case, which may aid in the resolution of this question, I am not opposed to allowing the trial court an opportunity to rule on the question taking into consideration our 12observations herein. However, I do not believe we should pre-termit a ruling on the trial judge’s decision to strike the .jury foreperson’s affidavit. Louisiana Code of Evidence Article 606(B) expressly provides:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon his or any other juror’s mind or emotions as influencing him to assent to or dissent fi’om the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury’s attention. . Nor may his affidavit or evidence *549 of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
Clearly, the trial judge acted properly in striking the jury foreperson’s affidavit. Further, juror Gisclaire can testify to no more than she has already stated in her affidavit. I can think of no further information the law permits juror Gisclaire to share that she has not already provided in her affidavit. The Code of Evidence prohibits the courts from inquiring into “any matter or statement'occurring during the course of the jury’s deliberations” and prohibits an inquiry by the court as “to the effect of anything upon [Gisclaire’s] or any other juror’s mind or emotions” which may have influenced Gisclaire or any other juror to either agree or disagree with the verdict.
This court has recently reaffirmed ’the steadfast rule embodied in our Code of Evidence and well established jurisprudence:
Pursuant to La.Code Evid. art. 606(B), a juror cannot testify as to any matter or statement occurring during deliberations “or to the effect of anything upon his or any other juror’s mind or emotions as influencing him to assent to or dissent from the verdict ... or concerning his mental processes.” This article also precludes juror statements and affidavits. Id. The one exception in civil cases is that the juror may testify as to “whether any outside influence was improperly brought to bear , upon any juror.” Id.
-Ifc • • ■
In Parker v. Centenary Heritage Manor Nursing Home, 28,401 (La.App. 2 Cir. 6/26/96), 677 So.2d 568, writ denied, 96-1960 (La.11/1/96), 681 So.2d 1271, the jury answered no regarding the negligence of a defendant hospital in its treatment of the plaintiff. After trial, the plaintiff obtained juror affidavits to show that the jurors were confused over the meaning of the word treatment. The ■trial court struck the affidavits. The appellate court stated:
The sanctity and privacy of jury deliberations is ' strongly safeguarded' in Louisiana. Neither party is allowed to unlock the closed door of those deliberations, except in very limited circumstances. As the trial court correctly found, Louisiana .law is well settled that the affidavits and testimony of jurors cannot be used to impeach their-ver diets.
Parker, 677 So.2d at 574 (citing Theriot v. Theriot, 622 So.2d 257 (LaApp. 1 Cir.1993), writ denied, 629 So.2d 1138 (La.1993)).
The Parker court found that failure to understand an interrogatory was not a matter about which the plaintiffs were able to offer any admissible supporting proof, and there was no outside improper influence which would allow the introduction of juror testimony. Similarly, depositions of three jurors, sought to impeach the verdict of the entire jury, were properly excluded in Williams v. Super Trucks, Inc., 36,993 (La.App. 2 Cir 4/9/03), 842 So.2d 1210, writ denied, 03-1303 (La.9/5/03), 852 So.2d 1042.
Dubois v. Armstrong, 2015-345, p 8 (La.App. 3 Cir. 2/10/16), 186 So.3d 305 (Not released for publication) See also, Glod v. Baker, 08-355 (La.App. 3 Cir. 11/19/08), 998 So.2d 308 and State v. Durr, 343 So.2d 1004 (La.1977).
The only thing Gisclaire may testify to is whether any outside influence was brought to bear. What does this mean in this case? There is no assertion here that the bailiff acted improperly or that any outside party threatened the juror. The only possible outside influence here was revealed *550 by Gisclaire when she told the trial | Judge that she had direct knowledge of the child’s treatment, knew the hospital-and the doctors being sued and had worked with them in this very case. What impact this relationship and knowledge had on Gisclaire’s ultimate participation in jury deliberation and reaching a verdict is not discoverable because .the Code of Evidence prevents inquiry into her thought processes.
We cannot get into the jury’s mind, or even into Gisclaire’s mind. I believe Gis-claire’s affidavit, bolstered by the affidavit of the trial judge’s law- clerk, fully demonstrates that Gisclaire’s continued service on the jury reasonably could have, deprived the, litigants of the right to a fair and impartial jury; Gisclaire was a potential witness in the matter. Additionally, she disclosed facts post-trial which creates doubt in any .reasonable mind, including her own, that she could remain impartial particularly considering she worked closely with several of the Defendants on the very child who is :the subject of this litigation. She expressed as clearly as she knew how to the trial judge that her impartiality was severely compromised and I do not think any further inquiry is necessary, or permitted once she entered the deliberations-room.
In Able v. Vulcan Materials Co., 2011-448, p. 9 (La.App. 1 Cir. 2/8/12), 94 So.3d 1, 13 (emphasis added), our sister circuit underscored the gravamen of the right to trial by a fair and impartial jury:
Justice Marshall wrote that the great value of a trial by jury lies in its fairness and impartiality. United States v. Burr, 25 F.Cas. 49, 50 (Circuit Court D. Virginia 1807). A jury should enter upon the trial with minds open to those impressions which the testimony and the law of the case ought to make, not with preconceived opinions which will resist those impressions. Id More recently, the United States Supreme Court has stated that among the basic fair trial rights that can never be treated as harmless is the right to an impartial adjudicator, whether judge or jury. Gomez v. United States, 490 U.S. 858, 876, 109 S.Ct. 2237, 2248, 104 L,Ed.2d 923 (1989). Indeed, the Louisiana Code of Civil Procedure recognizes the | .^importance of a jury’s impartiality, permitting a juror to be challenged for cause, “[w]hen the juror has formed an opinion in the case or is not otherwise impartial, the cause of _• his. bias being immaterial.” La. C.C.P. art. 1765. Safeguards of juror impartiality include voir dire and protective instructions from the trial judge. Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982).
The Louisiana Supreme-Court has set forth two requirements in- determining whether a judgment was obtained by fraud or ill practices:
• According to article 2004 of the Code of Civil Procedure, any final judgment obtained by fraud or ill practices may be annulled. Our jurisprudence sets forth two' criteria to determine whether a judgment has been obtained by actionable fraud or ill practices: (1) when the circumstances under which the judgment was rendered show the deprivation of legal rights of the litigant who seeks relief, and (2) when the enforcement of the judgment would be unconscionable and inequitable. Smith v. Cajun Insulation, Inc. 392 So.2d 398 (La.1980). Johnson v. Jones-Journet, 320 So.2d 533 (La.1975). Furthermore, although our courts do not sanction negligence or laches, they have not hesitated to afford relief against such judgments regardless of any issue of inattention or neglect. C.C.P. art. 2004, Official Comment (b); *551 Alonso v. Bowers, 222 La. 1093, 64 So.2d 443 (1953); Succession of Gilmore, 157 La. 130, 102 So. 94 (1924); City of New Orleans v. LeBourgeois, 50 La.Ann. 591, 23 So. 542 (1898); Comment, The Action of Nullity Under Louisiana Code of Civil Procedure Article 2004, 38 La.L.Rev. 806 (1978). Thus, the article is not. limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein, a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the. party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable. Chauvin v. Nelkin Ins. Agency, Inc. 345 So.2d 132 (La.App. 1st Cir. 1977), writ denied, 347 So.2d 256 (La.1977); Schoen v. Burns, 321 So.2d 908 (La.App. 1st Cir.1975); St. Mary v. St. Mary, 175 So.2d 893 (La.App. 3d Cir.1965); Tapp v. Guaranty Finance Co., 158 So.2d 228 (La.App. 1st Cir.1963), writ denied, 245 La. 640, 160 So.2d 228 (1964).
Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070-71 (La.1983).
I believe the evidence before us leaves no doubt that the litigants in this trial were denied one of the most fundamental and basic constitutional bedrock rights of our judicial system, the right to a fair and impartial jury. Enforcement of any judgment obtained in derogation of so fundamental a right is unconscionable and | (Inequitable. The determination of whether juror Gisclaire could be a fair and impartial juror cannot be left to the outcome of the trial, i.e. .the jury verdict, nor can it be left to Gisclaire’s personal determination that she could be fair and impartial if she were to so testify under further questioning on remand, or to any “Monday morning” quarterbacking on our. part. Gisclaire was legally an unqualified-juror because she was a potential witness in the case. The facts Gisclaire presented to the trial judge, and now to this court, leave no doubt in my mind that the trial judge’s failure to disclose the communication' to Plaintiff cannot be deemed harmless error. I am in no way persuaded by any protestation of Defendants that Plaintiffs’ counsel should have seen, from the volume of papers in evidence, Gisclaire’s name- during voir dire ánd he “possibly” made á choice not to complain about her presence on the jury. Even Gisclaire did not discern any connection to the matter before she noticed her own name on á trial exhibit flashed on screen to the jury during the trial. What matters is that upon realizing her direct involvement in the cáse she alerted the trial judge that her impartiality was in question. The trial judge’s decision to keep her revelation secret from all the litigants afforded no opportunity to Plaintiffs counsel to. explore this juror’s fitness to serve. It is the denial of this opportunity that now makes.it impossible for us to say with any real conviction that .Plaintiffs right to a fair and impartial jury was not compromised.
The defense seemingly argues “no harm though fowl may have occurred here” because all of the jurors voted liability in favor of Plaintiff and as a consequence the judgment is not unconscionable, even in light of an alleged ill practice. But it is equally assertable here that the jurors’ failure to assign any negligence to the local doctors and hospital may very well have been influenced by 17the presence of juror Gislcaire and what undiscoverable events occurred during deliberation that may have motivated the jurors to not render a verdict against the local Defendants who were employer, friends and colleagues of juror Gisclaire. The danger that the latter could have occurred in this case • is not *552 imaginary. As the state supreme court has articulated:
In Johnson v. Jones-Journet, 320 So.2d 533 (La.1975), this Court reviewed the historical development of C.C.P; art. 2004 and noted that the jurisprudence under Art. 607- of the Code of Practice (the source of present C.C.P. art. 2004) established the following criteria for an action in nullity: (1) that the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) that the enforcement of the judgment would have been unconscionable and inequitable. Since that time, this Court has accepted those two requirements as the necessary elements in establishing a nullity action under Art. 2004. See Gladstone v. American Auto. Ass’n, Inc., 419 So.2d 1219 (La.1982); Kem Search, supra; Belle Pass Terminal, Inc. v. Jolin, Inc., 01-0149 (La.10/16/01), 800 So.2d 762.
However, those cases also further defined the types of conduct required to establish those two elements depending on the type of fraud or ill practice alleged. This Court has held that “the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations where a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable.” Power Marketing, supra at 671; Kem Search, supra at 1070 (citing Chauvin v. Nelkin Ins. Agency, Inc., 345 So.2d 132 (La.App. 1 Cir.), writ denied, 347 So.2d 256 (La.1977)); see also, Schoen v. Burns, 321 So.2d 908 (La.App. 1 Cir.1975); St. Mary v. St. Mary, 175 So.2d 893 (La.App. 3 Cir.1965); Tapp v. Guaranty Finance Co., 158 So.2d 228 (La.App. 1 Cir.1963), writ denied, 245 La. 640, 160 So.2d 228 (1964).
The Court in Kem Search further defined the required “deprivation of legal rights” as “[cjonduct which prevents an opposing party from having an opportunity to appear or to assert a defense.” Id.9 This definition was further expanded in Belle Pass, which held that “a right to a fair and impartial trial is a legal right entitled to all participants in a legal proceeding.” 800 So.2d at 767.
Is Wright v. Louisiana Power & Light, 2006-1181, pgs. 12-13 (La.3/9/07); 951 So.2d 1058,1067 (emphasis added).
Plaintiff was denied the opportunity to question juror Gisclaire and to challenge her fitness to serve as a juror. I simply cannot conclude from the facts known in the record at this stage that this denial was not inequitable or harmless.